**COMMODITY FUTURES TRADING COMMISSION, Plaintiff-Appellant,**

v.

**BOARD OF TRADE OF the CITY OF CHICAGO, and Chicago Mercantile Exchange, Defendants-Appellees.**

Nos. 82–1910, 82–2340.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 18, 1983.

Decided March 1, 1983.

Joan L. Loizeaux, Sp. Counsel, Commodity Futures Trading Com'n, Washington, D.C., for plaintiff-appellant.

Scott E. Early, Kirkland & Ellis, James T. Malysiak, Freeman, Rothe, Freeman & Salzman, Chicago, Ill., for defendants-appellees.

Before BAUER, WOOD and POSNER, Circuit Judges.

POSNER, Circuit Judge.

These consolidated appeals by the Commodity Futures Trading Commission from orders entered in companion suits that the Commission brought against the Chicago Board of Trade and the Chicago Mercantile Exchange require us to decide questions of mootness and its procedural consequences.

The suits grew out of events which began in 1975, when the Commission (which regulates the nation's commodity exchanges under the Commodity Exchange Act, 7 U.S.C. §§ 1 et seq.) authorized the Mercantile Exchange to create a futures market in 13-week Treasury bills. In 1977 the Commission authorized the Board of Trade to create a similar market in long-term Treasury bonds. When these two authorizations were made, each exchange specified just four months in which delivery under a futures contract for Treasury obligations could take place. The Mercantile Exchange had a "December cycle," which meant that if you contracted to sell Treasury bills in the future you had to promise delivery in December, March, June, or September following the date of the contract, and the Board of Trade had a "September cycle" with the same four months except that the first month could be September rather than December.

In 1980, both exchanges added another cycle. The Commission said they could not do this without its permission. They disagreed. The merits of the controversy are unimportant to these appeals; what is important is that in July 1980 the Commission filed suit to enjoin both exchanges from allowing the trading of futures contracts on cycles the Commission had not approved in advance, and moved for preliminary injunctions. Later in July the Commission issued a rule altering the rules of the Board and of the Mercantile Exchange to require that in the future the exchanges would have to get the Commission's authorization before creating new delivery cycles for futures trading in Treasury obligations. See 45 F.R. 51520, 7 C.F.R. §§ 7.100, 7.200. The exchanges did not challenge this rule, which, being prospective only, is not applicable to the delivery cycles challenged by the Commission's suits.

The district judge consolidated the hearing on the Commission's motions for preliminary injunction with trial on the merits, and in August 1980, after a six-day hearing, entered findings of fact and conclusions of law in separate orders dismissing the two suits on the merits. The Commission appealed. Although the Board of Trade's new delivery cycle had expired in May 1981, in August 1981 we affirmed the district

court's denial of preliminary relief in both suits but held that consolidation had been improper and remanded for a new trial on the merits. 657 F.2d 124 (7th Cir.1981).

In March 1982 the Commission moved to dismiss its suit against the Board of Trade as moot because of the promulgation of the Commission's new rule in July 1980 and the expiration of the challenged delivery cycle in May 1981. At the same time the Commission moved the district court to vacate its decision of August 1980 denying the Commission's motion for preliminary injunction. The court granted the motion to dismiss the case (which the Board of Trade did not oppose) but denied the motion to vacate its previous decision. That denial—a final judgment within the meaning of 28 U.S.C. § 1291—is the only order appealed from in No. 82–1910.

The Mercantile Exchange's challenged delivery cycle expired in May 1982 (after the dismissal of the Commission's suit against the Board of Trade), and the Commission moved to dismiss its suit against the Exchange as moot and to vacate the district judge's August 1980 decision. The Exchange responded by moving for entry of final judgment on the merits on the basis of the findings of fact and conclusions of law in that decision. The judge granted the Mercantile Exchange's motion in June 1982, at the same time refusing to vacate the earlier decision. The judgment he entered on the Exchange's motion and his order denying the Commission's motion are the orders appealed from in No. 82–2340.

The appeals present two issues: whether the Commission's suit against the Mercantile Exchange was moot when the district judge entered final judgment on the merits, in which event the proper judgment would have been dismissal for lack of jurisdiction; and whether, when a case becomes moot after a decision granting or denying a preliminary injunction, the district judge is required to vacate that decision. We consider a third issue of mootness, on our own initiative, at the end of the opinion.

If all the Commission had been seeking in its suit against the Mercantile Exchange

had been an order preventing trading on a delivery cycle that expired in May 1982, the case would have had to be moot when the district court entered judgment in June 1982. For, on that assumption about the extent of the relief sought, if the Commission had pressed through to a triumphant conclusion and won a permanent injunction against trading on that cycle it would have won nothing, because the cycle was over, and the Mercantile Exchange would have lost nothing, because it could not be hurt by an injunction to prevent it from doing a completed act. But the Commission was seeking a broader injunction, against the Exchange's ever again allowing trading on delivery cycles not approved by the Commission in advance, and the expiration of the particular delivery cycle that had prompted the lawsuit did not moot the Commission's quest for this broader relief.

But the issuance of the rule requiring the exchanges to get the Commission's approval for any future delivery cycles did moot the case, once the challenged delivery cycle—which, as we have said, was not subject to the rule—expired in May 1982. See *Sannon v. United States,* 631 F.2d 1247, 1250–51 (5th Cir.1980), and cases cited there. True, it is always possible that the Commission will some day rescind the rule, but it is unlikely, since the rule closes a loophole rather than imposing some novel, onerous, or controversial duty on the exchanges, or conferring an immunity on them. Although mootness is sometimes painted in black and white—"federal courts are without power to decide questions that *cannot* affect the rights of litigants in the case before them," *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971) (emphasis added)—it really should be painted in shades of gray, since few controversies are wholly beyond the power of changed circumstances to revive; but the probability of revival is too small in this case to allow a federal court to exercise jurisdiction.

The Mercantile Exchange points out that the Commission could file suits under other provisions of the Commodity Exchange Act

to punish the Exchange for its refusal to get the Commission's approval of the new delivery cycle. See 7 U.S.C. §§ 7b, 8(a), 13a. If it were the Commission's intention, on having lost the first round, to moot the district court decision, and with that out of the way bring a new action to prove that the Exchange had acted unlawfully and to punish it for its unlawful act, the present action would not be moot. See *Dow Chem. Co. v. EPA,* 605 F.2d 673, 678 (3d Cir.1979). The case would then be the mirror image of *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953), where the Supreme Court held that a firm against which the government was seeking an injunction could not moot the case by stopping the practice that the government wanted to enjoin, since that would leave the firm free to resume the practice and put the government to the expense of a new suit. But there is no indication that the Commission has mooted (or tried to moot) this case with the idea of retiring to lick its wounds, fully intending to come out fighting again; the Commission issued the rule before the district judge denied its motion for preliminary injunction.

██ True, there may some day be other litigation between the Commission and the Exchange, litigation in which, even though it is not litigation over delivery cycles, the judgment entered by the district court in the present case may have collateral estoppel effect. That must be a possibility—otherwise the Commission would have little if any reason to appeal the entry of final judgment for the Exchange—but it does not "unmoot" the case. Since the future is unknown, one can never be certain that findings made in a decision concluding one lawsuit will not some day (if allowed to do so) control the outcome of another suit. But if that were enough to avoid mootness, no case would ever be moot. Moreover, since a dismissal for mootness is a dismissal for lack of jurisdiction, and a court that has no jurisdiction cannot enter a judgment with preclusive effect in subsequent litigation except on the issue of jurisdiction itself, see *Stewart Securities Corp. v. Guaran-*

*ty Trust Co.,* 597 F.2d 240 (10th Cir.1979), it is circular to argue that a judgment is not moot because it may have preclusive effect, when it can have preclusive effect only if it is not moot. That determination must rest on more than the truism that a final judgment can collaterally estop parties (and sometimes nonparties) in future litigation.

The district judge's refusal to vacate his decision on preliminary relief presents a separate issue. We have found no case that decides whether a district judge has to vacate a decision granting or denying a preliminary injunction if the case becomes moot before he enters final judgment. Although a footnote in *Nader v. Volpe,* 466 F.2d 261, 272 n. 72 (D.C.Cir.1972), suggests that he does not have to, its authority is weakened by the court's failure to consider the possible collateral estoppel effect of a decision on preliminary relief—about which more presently. But since district courts do not commonly vacate such decisions, if we accepted the Commission's position we would be putting a new burden on our harried district judges, and we ought to have a pretty good reason for doing so.

██ On the related question whether a court of appeals must vacate the district court's decision when the case becomes moot after the decision is entered but before the appeal is decided, the answer is not in doubt: it must. See, e.g., *Great Western Sugar Co. v. Nelson,* 442 U.S. 92, 99 S.Ct. 2149, 60 L.Ed.2d 735 (1979) (per curiam). Thus in *Barbour v. Central Cartage, Inc.,* 583 F.2d 335, 337 (7th Cir.1978) (per curiam), we directed the district court to vacate the decision it had entered on a motion for preliminary injunction, because the case had become moot while the appeal from that decision was pending. But it was not a case that became moot after we had affirmed the denial of a preliminary injunction.

The reason for vacating a lower court's decision when the case becomes moot pending appeal is to make sure that a decision of which the losing party was denied appellate review will not have preclusive effect in

subsequent litigation between the parties. *United States v. Munsingwear*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950). This is tenable, however, only if the case becomes moot for reasons beyond either party's control or the appellee mooted the case (hoping thereby to preserve the decision in his favor). Suppose instead that the appellant, being pessimistic about prevailing on appeal, mooted the case in the hope of being able to start over in the district court; in that event, vacating the district court's decision would deprive the appellee of the benefit of a decision that by hypothesis was pretty sure to be affirmed. *Ringsby Truck Lines, Inc. v. Western Conference of Teamsters*, 686 F.2d 720 (9th Cir.1982). The *W.T. Grant* case, *supra*, suggests that such a case might not even be moot. Yet the Supreme Court, in a case similar to *Ringsby*, ordered the court of appeals to vacate the district court's decision. *Board of Regents of University of Texas System v. New Left Education Project*, 414 U.S. 807, 94 S.Ct. 118, 38 L.Ed.2d 43 (1973) (per curiam), vacating 472 F.2d 218 (5th Cir.); see *id.* at 221. And when a case becomes moot after the court of appeals has decided it but before the Supreme Court has acted on a petition for certiorari, it continues to be the Court's practice to vacate the court of appeals and district court decisions. See, e.g., *Chicago Bd. Options Exchange, Inc. v. Board of Trade of City of Chicago*, —— U.S. ——, 103 S.Ct. 434, 74 L.Ed.2d 594 (1982) (per curiam). Because the probability that the Court will grant certiorari and reverse is today very small in the average case, the Court has been urged to limit the practice to cases where it would have granted the petition for certiorari had the case not become moot. Brief for U.S. in Opp. to Pet. for Cert., *Velsicol Chem. Corp. v. United States*, No. 77–900, Oct. 1977, cert. denied, 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978); Note, *Collateral Estoppel and Supreme Court Disposition of Moot Cases*, 78 Mich.L.Rev. 946, 951 (1980). The Court's action in denying rather than dismissing the petition for certiorari in *Velsicol* is some evidence that the Court may have accepted this suggestion but it has never said it has accepted it.

As an original matter, it could be argued that whether a decision that the loser could not appeal should be given preclusive effect is usually better left to the judgment of the court in any future litigation in which a party wants to use the decision preclusively, since only that court can know the actual circumstances in which preclusion is sought: sufficient unto the day is the evil thereof. This is not to disparage the good sense of the Supreme Court's vacating the lower court decisions in a case where certiorari would have been granted; the Court knows better than could a court in future litigation whether certiorari is likely to be granted and the court of appeals' decision reversed, and therefore how reliable the court of appeals' decision is. But it does not follow that a court of appeals, which does not have a discretionary jurisdiction, should always vacate the district court's decision when the case becomes moot pending appeal. The fact that the Supreme Court nevertheless insists on strict obedience to this rule—maybe even where the appellant deliberately mooted the case to prevent a reversal—is evidence of the Court's hostility to giving any preclusive effect to findings that lack the stamp of reliability that comes from surviving appellate review; and the Commission argues by analogy that findings made in a decision on preliminary relief also lack sufficient reliability to be given preclusive effect even if the decision is affirmed on appeal.

Whether or not to vacate decisions granting or denying preliminary injunctions would have only academic interest, though, if findings made in such decisions did not have preclusive effect; but they do if the circumstances make it likely that the findings are accurate, reliable. See, e.g., *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir.1961) (Friendly, J.); *Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 995–96 (7th Cir.1979); 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4434 (1981); 1 Restatement of Judgments (Second) § 13, Illustration 1 at pp. 136–37 (1982). By this test,

since the district judge in this case entered detailed findings of fact after full hearing and the findings were affirmed on appeal, it is indeed possible that unless his decision is vacated some of his 45 findings of fact may some day be given collateral estoppel effect in litigation between the Commission and the Mercantile Exchange or Board of Trade. It is not certain, though, and not only because there may never be such litigation to which the findings pertain: the fact that mootness prevented the district judge (and prevents us) from revising his findings on the basis of a full trial on the merits might—though the cited authorities suggest it would not—persuade a court in future litigation to deny collateral estoppel effect to the district judge's findings.

■ The Commission is asking us to make up that court's mind for it, by ordering the district judge to vacate his findings. But the considerations that have persuaded other courts to give collateral estoppel effect to findings made in decisions granting or denying preliminary injunctions persuade us that we should not exclude all possibility of that happening here by vacating the district judge's decisions. Since such decisions are appealable, 28 U.S.C. § 1292(a)(1), the findings on which they are based often receive considerable, if sometimes hurried, judicial scrutiny. Here the findings were entered after a six-day hearing—which is longer than most federal trials, including trials in securities and commodities regulation cases, see 1981 Ann.Rep. of Director, Adm.Off., U.S. Courts at A–40 to A–41 (tab. C8)—and were affirmed unanimously by a panel of this court in a published opinion after full briefing and oral argument, see 657 F.2d at 128. If the district judge nevertheless thought that the findings he had made were too tentative to deserve being given preclusive effect in future litigation—and that the court presiding over such litigation might not realize how tentative they were—we can assume (without having to decide) that he had the power to vacate his findings when these cases became moot. But we do not think he was required to exercise the power in the present circumstances. We need not decide whether he would have had to do so if his decisions had not been appealed.

■ Up to now we have assumed that both suits became moot after this court affirmed the district court's decisions denying the Commission's motions for preliminary injunction. The suit against the Mercantile Exchange did not become moot until the expiration of· the challenged delivery cycle in May 1982, many months after our decision, but the Board of Trade's challenged cycle expired in May 1981, three months before our decision. Since the promulgation of the Commission's new rule in July 1980 mooted its controversy with the exchanges over any delivery cycles other than those predating the rule, and the expiration of those cycles mooted the controversy over them, there is no escaping the conclusion that the suit against the Board of Trade was moot at the time we rendered our previous decision. None of the parties has made an issue of this, but since mootness is jurisdictional we are required to consider it on our own initiative, and therefore to vacate the district court's findings in the Board of Trade suit because it became moot pending appeal. *Great Western Sugar Co. v. Nelson, supra.* But we shall not vacate our own previous decision; it decided consolidated appeals, involving identical issues, and only one of the appeals was moot when the decision was entered.

To summarize, in No. 82–1910 the district court's order refusing to vacate its preliminary decision of August 1980 in the suit against the Board of Trade is reversed with directions to vacate the decision, while in No. 82–2340 the judgment entered by the district court is reversed with directions to dismiss the suit against the Mercantile Exchange as moot, but the court's order refusing to vacate its preliminary decision of August 1980 in that suit is affirmed. No costs in this court.

So Ordered.