**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, et al.,** Plaintiffs–Appellees,

v.

**UAL CORPORATION and International Association of Machinists & Aerospace Workers, AFL–CIO, Defendants–Appellants.**

Nos. 89–2617, 89–2627.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 17, 1990.

Decided March 14, 1990.

---

veny & Meyers, Los Angeles, Cal., Lewis B. Kaden, James D. Liss, Davis, Polk & Wardwell, New York City, for UAL Corp.

Edward L. Foote, Duane M. Kelley, Winston & Strawn, Chicago, Ill., Henry L. King, Richard E. Nolan, Daniel L. Brockett, Susan L. Sommer, Lewis B. Kaden, James D. Liss, Davis, Polk & Wardwell, New York City, for Neil A. Armstrong, Andrew F. Brimmer, Edward E. Carlson, Richard P. Cooley, E. Mandell Dewindt, William M. Jenkins, Juanita M. Kreps, Charles F. Luce, Fujio Matsuda, John F. McGillicuddy, Harry Mullikin, James J. O'Connor, Frank A. Olson, Nicholas R. Petry, John C. Pope, Stephen M. Wolf.

Jacob N. Gross, Chicago, Ill., John A. Edmond, Sweeney, Edmond & James, Washington, D.C., for Intern. Ass'n of Machinists & Aerospace Workers.

Joel H. Kaplan, Gary S. Kaplan, Joel S. Siegel, Arvey, Hodes, Costello & Burman, Chicago, Ill., for United Air Lines, Inc.

Before POSNER, FLAUM and RIPPLE, Circuit Judges.

POSNER, Circuit Judge.

This case returns to us following our remand to the district judge to consider questions of state law left undecided on the first round. 874 F.2d 439 (7th Cir.1989). We can be brief, as the facts are set forth in our previous opinion.

The airline pilots' union wants to take over United Air Lines, and has sued to clear away two obstacles to its design in the form of two covenants in a collective bargaining agreement between United and the machinists' union, a traditional rival of the pilots' union. Section B(1)(b) of the agreement provides that in the event United is taken over, the machinists may file a section 6 notice under the Railway Labor Act, 45 U.S.C. § 156. The filing of such a notice is the first step in renegotiating a collective bargaining agreement in the industries subject to the Act, a process that can end in a strike if the parties are unable to agree on new terms. Section C of the agreement provides that if United offers an

Jonathan G. Bunge, Roy M. VanCleave, Robert W. Pratt, Keck, Mahin & Cate, Chicago, Ill., Robert S. Smith, David E. Nachman, John J. Sullivan, Gary Stein, Paul, Weiss, Rifkind, Wharton & Garrison, Michael E. Abram, Stephen Presser, Bruce H. Simon, Cohen, Weiss & Simon, New York City, for plaintiffs-appellees.

Joel H. Kaplan, Gary S. Kaplan, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., Robert A. Siegel, Jerman, O'Mel-

employee stock ownership plan (ESOP) to any group of employees (namely the pilots, for it was through an ESOP that they meant to take over the company because of the tax advantages that the ESOP format confers), it must offer a similar, but potentially far more advantageous, plan to every other group of its employees (namely the machinists and the flight attendants). The pilots' suit charged that Section C violates the Railway Labor Act, and (in pendent counts) that both B(1)(b) and C violate Delaware's corporation law.

In the first round, Judge Zagel held that the Railway Labor Act preempted state corporation law with respect to both provisions of the collective bargaining agreement, and further that Section C of the agreement violated the Act. 699 F.Supp. 1309, 1330–34 (N.D.Ill.1988). Since the pilots had not challenged Section B(1)(b) as a violation of the Railway Labor Act, but only as a violation of Delaware law, the effect of the judge's ruling that the Act preempted that law was to clear away any possible objection to Section B(1)(b) founded on state law, and therefore to let that section stand. Both sides appealed, and we held that Section C was indeed a violation of the Railway Labor Act because it altered the pilots' employment entitlements without negotiation with the pilots, but that the Act did not preempt state law with regard to B(1)(b), the reopener provision. We thought the effect of that provision on the pilots' collective bargaining rights (as distinct from their investment interests) was too remote to justify the preclusion of state regulation. We remanded the case to Judge Zagel "for an initial determination concerning the lawfulness of sections B(1)(b) and C of the machinists' agreement under Delaware law." 874 F.2d at 447. On remand, Judge Zagel found both provisions to be contrary to Delaware law, and he entered a declaratory judgment to that effect, 717 F.Supp. 575 (N.D.Ill.1989), from which United and the machinists have appealed.

United's first contention is that the case has become moot and that we should therefore dismiss the appeal and vacate Judge Zagel's decision on remand. Since in our previous decision we had held Section C unlawful, and since the Supreme Court was not asked to review that decision, no purpose could be served, says United, by a declaration that Section C violates state law as well. Since, moreover, the machinists' agreement with United provides that "all covenants will expire at the end of the current collective bargaining agreement (October 31, 1989)," both Section B(1)(b) and Section C have expired. The "reopener" provision (as the parties term B(1)(b), although it is different from a conventional collective bargaining agreement reopener) is doubly moot, adds United, since the machinists served a section 6 notice in October. The only relief sought or granted by Judge Zagel on remand was a declaration that the two provisions violate Delaware law; no damages or other retrospective relief was sought. If the two provisions no longer have any force, then whatever force they may once have had and whatever mischief they may once have done, the case is now moot.

■ The test for mootness is simple to state but sometimes difficult to apply. It is whether the relief sought would, if granted, make a difference to the legal interests of the parties (as distinct from their psyches, which might remain deeply engaged with the merits of the litigation). *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). If it would make no difference at all to those interests then the court is not really deciding a "case," and (if a federal court) it is therefore exceeding the power conferred on it by Article III of the Constitution. The problem with the test is that it dichotomizes a continuum. *United States v. Articles of Drug,* 818 F.2d 569, 573–74 (7th Cir.1987); *Charles v. Daley,* 749 F.2d 452, 456 (7th Cir.1984); *CFTC v. Board of Trade,* 701 F.2d 653, 655 (7th Cir.1983). Unless the plaintiff has died and his cause of action has not survived (as would be true if the cause of action were for defamation), it is usually possible to conjure up a set of facts under which the relief sought would make a difference to the parties. But if it would be a very little

difference, then to economize on judicial resources as well as to give expression to policies thought inherent in Article III the case will be declared moot and relief withheld. *Id.; Moore v. Thieret,* 862 F.2d 148, 150 (7th Cir.1988); *James v. Department of Health & Human Services,* 824 F.2d 1132, 1136 (D.C.Cir.1987).

■ This criterion might seem to imply that when a court decides that a challenged practice is unlawful on one ground, the question whether it is also unlawful on some other ground would generally be moot, because it can make little difference whether a practice is unlawful for one or for several reasons, provided only that it is indeed unlawful. It is easy to imagine exceptions—for example, a case in which attorney's fees are available to the plaintiff only under an alternative ground. But there might be a general rule that all but one of a set of alternative grounds of decision are moot. Yet we observe that in a vast number of cases the court, having decided that the defendant's conduct is unlawful on ground A, goes on to decide that it is also unlawful on ground B. Although the word "moot" is sometimes used to refer to an issue that need not be decided in light of the resolution in the same opinion of another issue, e.g., *Bazemore v. Friday,* 478 U.S. 385, 387 n. 2, 106 S.Ct. 3000, 3002 n. 2, 92 L.Ed.2d 315 (1986) (per curiam), it has never been thought that a court that does decide it thereby violates Article III's implied prohibition against deciding moot cases. *United States v. Leon,* 468 U.S. 897, 924–25, 104 S.Ct. 3405, 3421, 82 L.Ed.2d 677 (1984); 13A Wright, Miller & Cooper, Federal Practice and Procedure § 3533, at p. 214 (2d ed. 1984).

■ The conceptual reason is that it is cases rather than reasons that become moot. Whether a court gives one or ten grounds for its result is not a question to which Article III prescribes an answer. The practical reason is that the alternative grounds are ripe for decision and deciding them may help a higher or a subsequent court. Aware of this practical reason, United points out that the time for filing a petition for certiorari to review our previ-

ous decision invalidating Section C of the machinists' agreement under the Railway Labor Act has lapsed. But this is wrong. Our decision was not a final decision; we remanded the case. A litigant in a federal case is not compelled to wait until the case is over before seeking certiorari, because it is not a requirement of certiorari to review an order of a federal court that the order be a final decision. 28 U.S.C. §§ 1254, 2101(e); S.Ct. R. 18. But the litigant is perfectly entitled to wait until the case is over, then appeal from the final judgment and raise on that appeal the validity of any previous orders that have not become moot in the interim. *Hughes Tool Co. v. Trans World Airlines, Inc.,* 409 U.S. 363, 365 n. 1, 93 S.Ct. 647, 650 n. 1, 34 L.Ed.2d 577 (1973); Stern, Gressman & Shapiro, Supreme Court Practice 316 (6th ed. 1986).

We could have ruled on the previous round of this litigation that Section C violated both the Railway Labor Act and Delaware law, without being accused of deciding a moot question, but we preferred to get the views of the district judge first. This interruption in the appellate proceeding does not preclude us from deciding the lawfulness of Section C on alternative grounds. Neither, of course, are we compelled. But when issues have been fully briefed, and can (as they can here, we shall see) be decided without entangling the court in difficult questions best left to percolate further before being resolved, it is desirable to decide them and head off further litigation between the parties.

A deeper problem with deciding the state law issues in this case may seem to be the ruling on preemption that preceded our determination that Section C violates the Railway Labor Act. We held that the Act— more precisely, the supremacy clause of the Constitution—precludes challenging Section C on the basis of state law. It seems paradoxical to rule that, even though state law cannot apply to C, C violates state law. But it is a superficial paradox. If we are right that the Railway Labor Act both preempts state law with respect to C and invalidates C, then indeed there is no occasion to consider whether C

violates state law. But we may be wrong. If we are wrong, the next question is whether C violates state law. We can answer both questions without deciding a moot case.

Turning to the second ground on which United argues mootness, we agree that if the expiration clause quoted earlier made Sections B(1)(b) and C expire on October 31 of last year, the case is moot and we are required to vacate Judge Zagel's order on remand in order to make sure that an order which could not be reviewed on the merits by an appellate court is not given preclusive effect under the doctrines of res judicata or collateral estoppel. *United States v. Munsingwear*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950); *Karcher v. May*, 484 U.S. 72, 83, 108 S.Ct. 388, 395, 98 L.Ed.2d 327 (1987); *McIntyre v. Fallahay*, 766 F.2d 1078, 1081 (7th Cir.1985); *CFTC v. Board of Trade, supra*, 701 F.2d at 656–57. That is the rule; whether it is a good rule is a separate question, on which see *id.* at 657.

But in fact the expiration clause is ambiguous. It says the covenants will expire "at the end of the current collective bargaining agreement (October 31, 1989)." This may *seem* straightforward: the agreement expires by its terms on October 31, and when that happens the covenants in the agreement expire too. But collective bargaining agreements governed by the Railway Labor Act do not expire on their expiration dates. The Act abhors a contractual vacuum. If on the date of expiration the parties have not negotiated a replacement agreement (and they had not here, and still have not), the old agreement continues in force.

Perhaps, however, the quoted clause just means that the *covenants* expire on October 31, 1989; while the rest of the agreement continues in force. The covenants are a subset of the agreement's terms. To make them alone expire on schedule would not violate the statute, because the statute does not freeze the entire collective bargaining agreement after the date of expiration, but only the wages, rules, and working conditions agreed on in the old agree-

ment. 45 U.S.C. § 156. It is also possible that the date was included in the clause merely for identification (the collective bargaining agreement that is scheduled to expire on October 31 although the Act may prevent its expiring then), and that the purpose of the clause was merely to nix any suggestions that the covenants might outlive the rest of the agreement, as covenants sometimes do. In support of this interpretation we note that the machinists themselves, though otherwise aligned in this case with United in opposition to the pilots, disagree with United's reading of the clause. Emphasizing that the clause itself states that the covenants are to "become part of the collective bargaining agreement" and that the agreement itself states that it "shall remain in full force and effect through October 31, 1989, and thereafter shall be subject to change by service of notice as provided for in Section 6 of the Railway Labor Act," the machinists make a respectable argument that the parties intended the covenants to continue in force until the collective bargaining agreement was renegotiated.

It is more than respectable; it is an argument that persuaded us, in a case involving an identically worded provision in a collective bargaining agreement between the same employer and the same union, that the so-called date of expiration (October 31 here, November 1 in the otherwise identical contract at issue in that case) "really isn't a termination date at all; it is the date before which no changes can be made." *EEOC v. United Air Lines, Inc.*, 755 F.2d 94, 99 (7th Cir.1985). The covenants here were explicitly made a part of the agreement, and the agreement was not terminable on October 31.

Though well aware that on its interpretation the case would become moot on October 31, 1989, United waited until nine days before the oral argument in this court to file a motion advising us that in its view the case was moot. Of course this delay did not forfeit its right to argue mootness; issues of subject-matter jurisdiction are not waivable. But United's delay is informa-

tive about its true view of the meaning of the contract.

United has failed to carry its burden (and it is its burden, *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 569–70, 104 S.Ct. 2576, 2582–83, 81 L.Ed.2d 483 (1984)) of proving that the case has become moot—at least its burden of proving that the case is moot because the challenged provisions have expired. For United has one more string to its bow. Last October the machinists filed their section 6 notice. What further harm, therefore, can a provision in the machinists' agreement entitling them to file such a notice if United is taken over do? The worst has happened. The section 6 notice has been filed. The countdown to a strike has begun.

In our previous opinion we puzzled over the question of precisely how Section B(1)(b), the reopener provision, could impede a takeover. A party to a collective bargaining agreement governed as this one is by the Railway Labor Act can file a section 6 notice at any time; what difference can it make if the agreement expressly allows it to do what the law entitles it to do anyway? We had failed to notice, however, that elsewhere in the agreement the machinists' union had waived its statutory right to file a section 6 notice until October 1, 1989. The reopener provision created an exception to this waiver, for the case where United was taken over. It enabled the machinists to accelerate the filing of a section 6 notice. That was what was scary to lenders. October 1 has come and gone; the scare is over.

■ Or is it? Although the question is a close one, we believe that the principle that an issue capable of repetition but evading review is not rendered moot by the occurrence of a condition that would otherwise have made it moot, *Weinstein v. Bradford*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (per curiam), is applicable to this case. The principle depends on two things: that the lawsuit is apt to outlast the injury, and that *this* plaintiff is likely to be victimized again by a repetition of the complained-of misconduct of *this* defendant. *Burke v. Barnes*, 479 U.S. 361, 364, 107

S.Ct. 734, 736, 93 L.Ed.2d 732 (1987). (The second condition is essential to the idea that courts adjudicate disputes between parties, rather than merely answering interesting questions of law.) Both conditions are satisfied here. The covenant of which the pilots complained was lethal while in force, but it was in force for only a brief time, and modern litigation is not characteristically brief. The filing of the section 6 notice by the machinists has set the stage for the negotiation of a new collective bargaining agreement in which United and the machinists will be free, if Judge Zagel's order is vacated, to reinsert the provisions waiving the machinists' statutory right to file a section 6 notice until a specified date and carving out from that waiver the case of a takeover of United. If the date specified is not far distant from the date on which the provisions are adopted, there may not be time, as there was not time here, for litigation challenging the lawfulness of the provisions to be completed before the date arrives and a new section 6 notice is filed. The parties could make the date as near or as distant as they wanted. They could make it terminate every thirty days, unless renewed, without impairing its efficacy as an antitakeover device.

■ We conclude that the case is not moot and arrive finally at the merits. We can be brief in light of Judge Zagel's painstaking opinion on remand. As he pointed out, under Delaware law an anti-takeover provision is lawful only if the corporation adopting it has given due consideration to shareholder welfare; the business-judgment rule in Delaware allows less scope for an anti-takeover provision than for provisions less likely to generate a conflict of interest between management, eager to retain control of the corporation, and the shareholders, eager to maximize the value of their shares. *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 180 (Del.1985). The proper characterization of Sections B(1)(b) and C, which the pilots contend are anti-takeover provisions and United and the machinists contend are provisions regulating the company's labor

relations, is a fact-bound issue on which Judge Zagel's determination, unless clearly erroneous, binds us. His determination that these are anti-takeover provisions is not clearly erroneous; it is not erroneous at all. There is abundant evidence that these provisions were adopted not to resolve a conflict between United and the machinists and thus head off a possible strike, as United and the machinists contend in this litigation, but to prevent the pilots from taking over the company.

Section C is particularly transparent; its only possible purpose is to discourage the pilots from making a takeover attempt by diluting the value of the stock that the pilots' employee stock plan would acquire by taking over the company. Although one can imagine the company's acceding to the machinists' request for such a provision not because the company wanted to defeat a takeover by the pilots but because it wanted to buy labor peace with the machinists, Judge Zagel found with ample support in the record that the object of *both* parties was to defeat a takeover by the pilots. As for Section B(1)(b), the evidence was again ample that its purpose was to scare off the lenders to whom the pilots might turn for the financing of their takeover attempt.

So these are anti-takeover devices, and of a unique lethality because unlike the usual "poison pills" the company could not rescind them. They were written into a collective bargaining agreement that the company could not alter unilaterally other than through the cumbersome process of a section 6 notice, followed by protracted mediation and cooling-off periods. They are the Doomsday Bomb in the arsenal of corporate defensive measures. Delaware law requires that defensive measures, and *a fortiori* defensive measures as irrevocable as these, be adopted with due concern for the interests of shareholders. The challenged covenants were adopted in haste and with due regard for nothing except their probable efficacy in defeating the pilots' takeover attempt. They violate Delaware law.

AFFIRMED.

RIPPLE, Circuit Judge, concurring in part and dissenting in part.

In my view, the dispute with respect to Section B(1)(b) is moot. The application of the so-called "capable of repetition yet evading review" exception to the mootness doctrine is always fact-specific and pragmatic. However, its invocation here involves more than pragmatism; it involves speculation.

In all other respects, I am pleased to join my brothers' disposition of the case.