## RAILWAY LABOR EXECUTIVES' ASSOCIATION, et al., Plaintiffs,

v.

## WHEELING & LAKE ERIE RAILWAY CO., Defendants, and

### Norfolk & Western Railway, et al., Intervenors.

### Civ. A. No. 90–0597–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Jan. 31, 1991.

---

John O'Brien Clarke, Jr., Fairfax, Va., for plaintiffs.

Timothy A. Harr, Washington, D.C., for defendants.

Jeffrey S. Berlin, Washington, D.C., and William P. Stallsmith, Jr., Norfolk, Va., for intervenors.

## MEMORANDUM OPINION

ELLIS, District Judge.

This appears to be, in this Court at least, the final chapter in the Norfolk Southern System ("NS") spur line sale/lease saga. The Fourth Circuit Court of Appeals recently affirmed this Court's issuance of preliminary injunctive relief enjoining the labor plaintiffs [1] from engaging in self-help in violation of the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 et seq. Following this, the Court granted summary judgment in favor of defendant Wheeling & Lake Erie Railway Co. ("Wheeling") and

---

**1.** The term "labor plaintiffs" is used throughout to refer to the plaintiffs in this action: Railway Labor Executives' Association, American Train Dispatchers Association, Brotherhood of Locomotive Engineers, Brotherhood of Maintenance of Way Employes, Brotherhood of Railroad Signalmen ("BRS"), Transportation Communica-tions International Union, Brotherhood of Railway Carmen, International Association of Machinists and Aerospace Workers, International Brotherhood of Electrical Workers, International Brotherhood of Firemen and Oilers, and Sheet Metal Workers' International Association.

intervenors Norfolk & Western Railway Co., Norfolk Southern Railway Co.[2] and Norfolk Southern Corporation (referred to collectively as "NW") as to Count II of the complaint and Count I of the counterclaim.[3] Thereafter, the Court denied the labor plaintiffs' Motion to Amend and Supplement the Complaint and Suggestion of Mootness as to the Original Complaint.[4] Only issues concerning the proposed forms of a permanent injunction and declaratory judgment remain to be resolved. Specifically, the remaining issues are (1) whether the proposed permanent injunction infringes on the First Amendment rights of individual members of the labor plaintiffs; (2) whether the permanent injunction should extend to the Brotherhood of Railroad Signalmen ("BRS") and other unions that might in the future be certified as representatives of Wheeling employees; (3) whether the permanent injunction should bar the labor plaintiffs from striking all NS system carriers or merely those in a specific area; and (4) the term of the permanent injunction. This memorandum opinion addresses these issues.

## I.

This saga's extensive facts need not be fully recounted here as they are set forth in opinions previously issued in this and a related case.[5] In essence, Wheeling's predecessor-in-interest, the Wheeling Acquisition Corporation, acquired from N & W approximately 575 miles of rail lines and an additional 264 miles of trackage rights. The transaction was consummated on May 17, 1990, at which time, Wheeling first came into existence as a carrier. Prior to and after this time, the labor plaintiffs sought to require Wheeling and its predecessor to treat or bargain with the labor plaintiffs over the manner in which Wheeling would hire its employees and the terms and conditions of their employment. To this end, the labor plaintiffs, two weeks prior to the consummation of the transaction, filed the complaint in this action, seeking *inter alia* immediate injunctive relief to stop the sale. This effort failed because the RLA, the putative basis for such relief, applies only to "carriers" and Wheeling's predecessor was not a "carrier" as that term is defined under the RLA. See *RLEA v. Acquisition Corp.*, 736 F.Supp. 1397 (E.D.Va.1990). Thereafter, Wheeling and the intervenors sought preliminary injunctive relief against the labor plaintiffs on the ground that strikes and self-help measures against the Norfolk system would violate the RLA in as much as the labor plaintiffs had not won the right to represent Wheeling's employees in accordance with RLA procedures. The labor plaintiffs' principal response was to contend that the National Labor Relations Act's "successorship doctrine"[6] applied in this context to require Wheeling to bargain with labor plaintiffs. The Court granted preliminary injunctive relief in favor of Wheeling and the intervenors and rejected the labor plaintiffs' invitation to apply the successorship doctrine in the RLA context. See *Railway Labor Exec. v. Wheeling & Lake Erie Ry.*, 741 F.Supp. 595 (E.D.Va.1990). The Fourth Circuit affirmed the grant of preliminary injunctive relief. See *RLEA v. Wheeling & Lake Erie Ry.*, 914 F.2d 53 (4th Cir.1990). Although this Court squarely addressed and decided the succes-

---

**2.** Intervenor Southern Railway Company changed its corporate name on December 31, 1990, to Norfolk Southern Railway. This change did not affect any legal right or obligation of the corporation.

**3.** *RLEA, et al., v. Wheeling & Lake Erie Ry. and Norfolk & Western Ry., et al.,* C.A. No. 90–0597–A (E.D.Va.) (Order dated Dec. 7, 1990).

**4.** *RLEA, et al., v. Wheeling & Lake Erie Ry. and Norfolk & Western Ry., et al.,* C.A. No. 90–0597–A (E.D.Va.) (Order dated Dec. 28, 1990).

**5.** *See RLEA v. Wheeling & Lake Erie Ry.,* 741 F.Supp. 595 (E.D.Va.1990), *aff'd,* 914 F.2d 53

(4th Cir.1990); *RLEA v. Chesapeake Western Ry.,* 738 F.Supp. 1544 (E.D.Va.1990); *RLEA v. Wheeling Acquisition Corp.,* 736 F.Supp. 1397 (E.D.Va.1990).

**6.** This doctrine holds that in certain circumstances a successor employer may have a duty to bargain with the representative certified to the predecessor employer. *See Fall River Dyeing and Finishing Corp. v. NLRB,* 482 U.S. 27, 107 S.Ct. 2225, 96 L.Ed.2d 22 (1987); *NLRB v. Burns Int'l Sec. Serv., Inc.,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972).

sorship doctrine issue,[7] the parties dispute whether the Fourth Circuit did so. Accordingly, labor plaintiffs filed a Motion to Amend and Supplement the Complaint and a Suggestion of Mootness as to the Original Complaint for the principal purpose of ensuring that the successorship doctrine issue would be squarely presented for appeal. The Court denied this motion, rejecting the labor plaintiffs' mootness contention[8] and concluding that the proffered amendment was untimely and unnecessary.[9] Thereafter, Wheeling and NW, at the Court's direction, submitted proposed

7. *See Wheeling & Lake Erie Ry.*, 741 F.Supp. at 599–600 ("the NLRA successorship doctrine does not apply here....").

8. Wheeling has hired its complement of employees. Even assuming this would moot the dispute over whether Wheeling had a duty to bargain with labor plaintiffs on this issue, it would not end the matter. The dispute encompasses more than hiring. As the labor plaintiffs' reliance on the successorship doctrine reflects, the dispute also covers work assignments, pay and other terms and conditions of employment. Thus, while the completion of the hiring process might moot that aspect of the dispute, it would have no similar effect with respect to labor plaintiffs' claim that Wheeling must bargain with them over work assignments and terms and conditions of employment.

Beyond this, labor plaintiffs' mootness contention relied chiefly on the rule announced in *United States v. Munsingwear, Inc.*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950). This reliance was unwarranted; *Munsingwear* does not require this Court to vacate its previous decision on the ground of mootness. Instead, *Munsingwear*, at most, requires an appellate court to vacate a district court's decision and direct the district court to dismiss when the case becomes moot pending appeal. *Id.* at 39, 71 S.Ct. at 106; *see also Nationwide Mutual Ins. Co. v. Burke*, 897 F.2d 734 (4th Cir.1990); *Phillips v. McLaughlin*, 854 F.2d 673, 678 n. 11 (4th Cir. 1988); *Koger v. United States*, 755 F.2d 1094, 1098 (4th Cir.1985); *CFTC v. Board of Trade of Chicago*, 701 F.2d 653, 657 (7th Cir.1983). But *Munsingwear* imposes no such requirement on district courts. *See CFTC v. Board of Trade*, 701 F.2d at 656–58. *Munsingwear's* underlying principle—to protect a losing party from the preclusive effects of a decision where that party is denied review—is not applicable here because the labor plaintiffs have not been denied review of this Court's decision. *See CFTC v. Board of Trade*, 701 F.2d at 657. Here, the only event that has occurred is that the unions apparently decided not to appeal the decision of the Fourth Circuit Court of Appeals in this matter. They will not be denied review unless the Court of Appeals declines to review this Court's decision on Count I on the ground that it is moot. It cannot be said now that the Court of Appeals will so decide. It may decide, for example, that the claim presented in Count I is "capable of repetition yet evading review." *See, e.g., Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 121–22, 94 S.Ct. 1694, 1697–98, 40 L.Ed.2d 1 (1974); *Cedar Coal Co. v. United Mine Workers of America*, 560 F.2d 1153, 1162–68 (4th Cir. 1977), *cert. denied*, 434 U.S. 1047, 98 S.Ct. 893, 54 L.Ed.2d 798 (1978); *National Organization for Women v. Operation Rescue*, 726 F.Supp. 1483, 1491 (E.D.Va.1989), *aff'd*, 914 F.2d 582 (4th Cir.1990).

In sum, the *Munsingwear* rule should apply at the appellate level only if a case becomes moot for reasons beyond either party's control or, if the appellee, hoping to preserve the decision, acted to moot the case. *See CFTC v. Board of Trade*, 701 F.2d at 657. *Munsingwear* should not apply when the losing party, "being pessimistic about prevailing on appeal, mooted the case in the hope of being able to start over in the district court; in that event, vacating the district court's decision would deprive the appellee of the benefit of a decision that by hypothesis was pretty sure to be affirmed." *Id.* (citing *Ringsby Truck Lines, Inc. v. Western Conference of Teamsters*, 686 F.2d 720 (9th Cir.1982).

9. As labor plaintiffs readily admitted, their latest proposed complaint, with one exception, sets forth a claim that is "based on essentially the same theories of successorship bargaining obligations as were embodied in Count I" of their First Amended Complaint. The second attempt by labor plaintiffs to amend the complaint in this fashion was rejected for essentially the same reasons as was the first. As this Court stated previously "[g]iven the Court's conclusion that the NLRA successorship doctrine does not apply here, it follows that the amendment to the complaint offered by labor plaintiffs fails to state a claim upon which relief can be granted.... Because the proffered amendment is insufficient on its face, it further follows that leave to amend should be denied as futile." *Wheeling & Lake Erie Ry.*, 741 F.Supp. at 600–01 (citations omitted).

The sole new claim asserted in the proffered amendment is that Wheeling interfered with elections conducted by the National Mediation Board under the RLA. This claim is futile and untimely. It is futile because the NMB has exclusive jurisdiction to resolve allegations of interference with elections it conducts. *Order of Railway Conductors v. National Mediation Board*, 141 F.2d 366, 367–68 (D.C.Cir.), *cert. dismissed*, 323 U.S. 688, 65 S.Ct. 51, 89 L.Ed. 556 (1944); *American Train Dispatchers Ass'n v. Denver & Rio Grande Western R.R.*, 614 F.Supp. 543, 544–45 (D.Colo.1985); *Local Union 808 v. P & W R.R.*, 576 F.Supp. 693, 703 (D.Conn.1983); *cf. USAir, Inc. v. National Mediation Board*, 711

forms for a permanent injunction and declaratory judgment, to which labor plaintiffs filed objections. These objections are treated here.

## II.

██ Labor plaintiffs expressed concern that the Court's entry of a permanent injunction could impermissibly restrict the First Amendment rights of labor plaintiffs' members. This concern is unfounded. The Court of Appeals in this case has already held that while picketing is a form of speech protected by the First Amendment, it is appropriate to enjoin unions from picketing in furtherance of their representation dispute with Wheeling because such action would violate the RLA. *Wheeling & Lake Erie Ry.*, 914 F.2d at 56. This holding of the Court of Appeals is fully consistent with the well-established principle that the First Amendment does not preclude the issuance of injunctive relief to prohibit unions from engaging in speech violative of the national labor laws.[10] Thus, the permanent injunction entered by the Court in this matter does not infringe on labor plaintiffs' members First Amendment rights. To underscore this point, paragraph B of the injunction has been revised to include the statement that the injunction "shall not restrict the exercise of any right that is protected by the First Amendment from

limitation by the Railway Labor Act or other statute...."

## III.

██ One of the labor plaintiffs, the BRS, is now the representative of some fifteen signalmen employed by Wheeling. Unlike the other labor plaintiff unions, the BRS won a representation election held under the auspices of the National Mediation Board. This fact, labor plaintiffs contend, means that the permanent injunction should not preclude BRS from engaging in self-help in the future. This contention is correct only insofar as it refers to the right to engage in self-help over issues arising following certification; it is not persuasive with respect to the right to strike and seek self-help based on the original pre-certification representational dispute and the pre-certification Section 6 notices. BRS's certification by the National Mediation Board certainly confers on BRS the right to require Wheeling to bargain or to treat with it pursuant to Section 6 of the RLA, 45 U.S.C. § 156, with respect to issues that may arise and mature after BRS's certification. But to exclude BRS entirely from the injunction would suggest, incorrectly, that BRS can rely on its recent certification to resuscitate the pre-certification Section 6 notifications. Such reliance is inappropriate; the pre-certification Section 6 notices

F.Supp. 285, 291 (E.D.Va.), *aff'd without opinion,* 894 F.2d 403 (4th Cir.1989) (federal court review of NMB discretionary determinations is limited to allegations that the NMB acted in violation of the Constitution, in excess of its jurisdiction, or in gross violation of a specific prohibition of the RLA). Further, where, as here, all that remains to be done in the case is the entry of declaratory judgment and a permanent injunction, denial of a motion to file an amended complaint is an appropriate course of action. *Shipner v. Eastern Air Lines, Inc.,* 868 F.2d 401, 407 (11th Cir.1989); *Schneider v. Russell Corp.,* 823 F.2d 422, 429 (11th Cir.1987); *Kelsey v. Minnesota,* 565 F.2d 503, 507 (8th Cir. 1977).

**10.** *See, e.g., International Longshoremen's Ass'n v. Allied International, Inc.,* 456 U.S. 212, 226, 102 S.Ct. 1656, 1664, 72 L.Ed.2d 21 (1982) (stating that the Court has consistently rejected the claim that secondary picketing in violation of the National Labor Relations Act is protected activity under the First Amendment and observing that "conduct designed not to communicate but to coerce merits still less consideration un-

der the First Amendment"); *International Brotherhood of Electrical Workers v. National Labor Relations Board,* 341 U.S. 694, 705, 71 S.Ct. 954, 960, 95 L.Ed. 1299 (1951) (holding that the prohibition of picketing in furtherance of unlawful objectives is not an abridgement of free speech); *Carpenters Local No. 33 v. National Labor Relations Board,* 873 F.2d 316, 322 (D.C.Cir.1989) (enjoining a union from picketing in violation of the National Labor Relations Act does not violate the First Amendment); *Catalytic, Inc. v. Monmouth & Ocean County Building Trades Council,* 829 F.2d 430, 436 (3d Cir.1987) (enjoining a union from distributing leaflets in violation of the National Labor Relations Act does not impinge upon First Amendment rights), *cert. denied,* 485 U.S. 1020, 108 S.Ct. 1573, 99 L.Ed.2d 888 (1988); *National Labor Relations Board v. Local Union No. 3,* 828 F.2d 936, 940 (2d Cir.1987) (a union's threat to strike is not protected by the First Amendment where the threat violates the National Labor Relations Act).

cannot be resuscitated as they were dead on arrival, *i.e.*, they never became effective. From this, it follows that the pre-certification Section 6 notices imposed no status quo obligation on Wheeling and hence BRS has no legal right to exercise self-help against Wheeling for "violation" of such a non-existing obligation.[11] Omitting BRS from the injunction might also invite BRS to seek, by self-help means, to vindicate its view that the successorship doctrine operates in the RLA context.[12] Accordingly, inclusion of BRS in the injunction is appropriate provided, as is true here, that the permanent injunction makes clear that the BRS and any other unions that may be certified in the future will not be able to rely on their pre-certification conduct or notices as a basis for any future exercise of self-help under the RLA. Thus, the permanent injunction makes clear that it does not restrict any self-help rights that a labor plaintiff union may acquire following NMB certification. It makes equally clear that Wheeling is not relieved of any obligation it may have to bargain or treat with such a union with respect to such post-certification issues. The language that accomplishes this purpose appears at paragraph C, page 5, of the Permanent Injunction and reads as follows:

> That this Injunction shall not excuse Wheeling from any duty under the RLA to treat with BRS, or any plaintiff union that may in the future be certified as the representative of some of Wheeling's employees, regarding matters that have arisen or may arise following the certification of each such union; and that this Injunction shall not restrict any right of such union to picket, strike or otherwise interfere with the business of NW, NS, or any of the other NS system rail carriers that may mature following the certification of each such union as representative and be based solely upon the union's representative status following certification: *Provided, that* any such union is prohibited from exercising self-help in connection with any event occurring prior to certification of that union, including but not limited to the service of any purported pre-certification notice on Wheeling pursuant to 45 U.S.C. § 156.

### IV.

▪ Labor plaintiffs insist that there is no basis for enjoining the unlawful exercise

---

**11.** Labor plaintiffs may take the view that if the pre-certification notices were valid under the RLA § 6, then Wheeling's subsequent unilateral wage reduction constituted a violation of the RLA status quo obligation. Quite apart from this Court's conclusion that the pre-certification notice imposes no such status quo obligation on Wheeling, it is worth noting that the § 6 status quo obligation does not prevent a carrier from making unilateral changes in rates of pay, rules or working conditions where, as here, no collective bargaining agreement is already in place. *See Williams v. Jacksonville Terminal Co.,* 315 U.S. 386, 62 S.Ct. 659, 86 L.Ed. 914 (1942); *International Association of Machinists v. Trans World Airlines, Inc.,* 839 F.2d 809, 812–14 (D.C. Cir.), *amended per curiam,* 848 F.2d 232, *cert. denied,* 488 U.S. 820, 109 S.Ct. 62, 102 L.Ed.2d 40 (1988). The D.C. Circuit, it is true, has acknowledged the possibility that the Supreme Court may decline to follow *Williams* in a future case; but significantly, the D.C. Circuit went on to hold that until the Supreme Court retreated from *Williams,* the rule of that case remained binding on lower courts. *International Association of Machinists,* 839 F.2d at 814. The facts here are squarely within the *Williams* rule because there is here " 'absolutely no prior history of any collective bargaining or agreement between the parties on any matter.' " 839

F.2d at 814 (quoting *Detroit & Toledo Shore Line R.R. v. United Transportation Union,* 396 U.S. 142, 158, 90 S.Ct. 294, 303, 24 L.Ed.2d 325 (1969).

**12.** Were this Court to permit BRS to resort to self-help on the basis of its pre-certification Section 6 notice, the result would undermine Congress' carefully crafted RLA structure. Under that structure, a union earns representation only after it has successfully completed a National Mediation Board supervised election and certification procedure pursuant to RLA § 2 Ninth. *See* 45 U.S.C. § 156; 45 U.S.C. § 151, Sixth; *Russell v. National Mediation Board,* 714 F.2d 1332, 1337 (5th Cir.1983), *cert. denied,* 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984); *Railway Employees' Co-op Ass'n v. Atlanta B & C.R. Co.,* 22 F.Supp. 510, 514 (D.Ga.1938). As Wheeling correctly notes, this settled legal principle is also compelled by common sense. Suppose, for example, that Wheeling signalmen had elected a different union. In that event, would Wheeling then have had a retroactive obligation to treat with that union before the election and could that second union strike for Wheeling's failure to do so? If so, how would Wheeling know in advance of certification which of several competing unions could insist upon pre-certification bargaining?

of self-help against carriers in the NS system other than NW. They suggest the Court has not previously granted such relief. The record indicates otherwise. Specifically, the record reflects the labor plaintiffs' initial intention to extend self-help measures to the NS system, which is why the preliminary injunction expressly prohibited the use of self-help against "NW or any of its affiliates." NW's "affiliates" include NS and subsidiaries of NS, including Norfolk Southern Railway. Although the preliminary injunction was granted on NW's motion, the first of the entities to intervene, this does not mean that subsequent intervenors, having now prevailed on a joint motion for summary judgment, should be precluded from obtaining the same degree of injunctive protection as that accorded to NW. The record supports such relief and the permanent injunction provides it.

## V.

Finally, labor plaintiffs assert that the three-year term for the injunction suggested by Wheeling and the intervenors is too long. They are correct. In general, injunctive relief should be narrowly tailored to remedy or guard against the specific apprehended harm. *See, e.g., Rogers v. Scurr*, 676 F.2d 1211 (8th Cir.1982). To this end, injunctions should be carefully limited in time and scope to avoid unwarranted, nonremedial effects. *See United*

*States v. Holtzman*, 762 F.2d 720 (9th Cir. 1985). On the basis of the record as a whole, the Court concludes that the permanent injunction in this matter should last only so long as there is a realistic risk that labor plaintiffs may resort to illegal self-help measures in connection with the instant dispute. The Court concludes that the appropriate time period is no more than 12 months and the permanent injunction so provides. Of course, labor plaintiffs have leave to return to this Court at any time to seek clarification of any of the injunction's provisions or to seek its vacation in light of any circumstances showing that the need for injunctive relief no longer exists.[13]

---

13. Labor plaintiffs also sought to avoid the issuance of an injunction on the ground that it was unnecessary. In support, labor plaintiffs submitted the declarations of various of their officers, each stating in essentially identical terms (1) that the particular union "no longer has any plan or intention of exercising any right to self-help against W & LE because of W & LE's refusal to bargain with [the labor plaintiff union], over the hiring of W & LE's employees"; (2) that in June 1990 the union "contemplated taking self-help against W & LE over that carrier's refusal to recognize ... [the labor plaintiff unions] as the bargaining representative ..." but that the union "will not now initiate such self-help so long as this Court, or any other court, declares that such self-help would be unlawful"; and (3) that the labor plaintiff union "will not engage in secondary self-help against the Norfolk Southern system because of a labor dispute with W & LE as long as [the labor plaintiff union] does not have a right to engage

in self-help against W & LE." These declarations, while somewhat reassuring, are not adequate to obviate the need for injunctive relief. The first portion of the declaration mistakenly understates the scope of the dispute by referring only to "the hiring of W & LE employees." As noted, *supra* note 8, the dispute involves more than hiring; it extends to work assignments, pay and other terms and conditions of employment. Moreover, the remaining declarations may be construed to mean nothing more than that labor plaintiffs' unions would refrain from self-help only as long as the unions or their counsel concluded that a right to self-help did not exist. Moreover, the labor plaintiff unions' statement limits itself to so-called "secondary" self-help, which is the labor plaintiffs' ambiguous characterization. In short, the declarations are vague and equivocal on critical points and provide no adequate substitute for the entry of a permanent injunction.