THE FIRST NATIONAL BANK OF CHI-
CAGO AS TRUSTEE OF THE INSTI-
TUTIONAL REAL ESTATE FUND F, et
al., Plaintiffs,

v.

ACCO USA, INC.–IBT RETIREMENT
PLAN, et al., Defendants.

No. 93 C 896.

United States District Court,
N.D. Illinois, E.D.

Jan. 7, 1994.

William F. Conlon, Mark Bruce Blocker, Sidlewy & Austin, Chicago, IL, for plaintiffs First Nat. as Trustee.

Harold C. Hirshman, Roger C. Siske, Sonnenschein, Nath & Rosenthal, Chicago, IL, for Manufacturing Corp. Retirement Trust and Donald P. Anderson.

Orin D. Brustad, Clarence L. Pozza, Jr., Miller, Canfield, Paddock & Stone, Detroit, MI, for defendant—ACCO USA, Inc.–IBT Retirement, Jim Beam Brands Co. Plans.

Joel S. Siegel, Bryan Robert Bagdady, Horvath & Lieber, Chicago, IL, for defendant—A.J. Maggio Co. Retirement Trust.

Robert W. Gettleman, Jeffrey Hoke Bergman, Lawrence G. Gallagher, D'Ancona & Pflaum, Chicago, IL, Jerry M. Aufox, Franklin Park, IL, for defendants, A.M. Castle & Co., Employer Trust, A.M. Castle & Co. Employers Profit Sharing Trust.

David S. Steefel, Holme, Roberts & Owen, Denver, CO, for defendant, Donald P. Anderson Trust.

Andrew R. Laidlaw, John T. Murray, Marcia Mahoney, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for defendant, Fort Howard Corp. Profit Sharing Retirement Plan.

Dennis P.W. Johnson, Walter Jones, Jr., Jorge V. Cazares, Pugh, Jones & Johnson, Chicago, IL, Thomas C. Graves, Terry L. Tyrrell, Morrison & Heckler, Kansas City, MO, for defendant, Harris–Hub Co., Inc. Profit Sharing Plan and Trust.

William Edmund Kenny, Michael Gerard Bruton, Pretzel & Stouffer, Chtd., Chicago, IL, for defendants, Henry Newgard & Co. Employee Profit Sharing Trust, Illinois Mun. Retirement Fund.

Lawrence L. Summers, Paul F. Russell, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for defendant, Inland Steel Industries Pension Plan and Trust.

Richard Jonathon Street, Wildman, Harrold, Allen & Dixon, Chicago, IL, for defendants, Kroger Co. Master Retirement Trust, McCormick Pension Plan.

James J. Wochner, Northbrook, IL, for defendant, Ortman–McCain Co. Employees Profit Sharing Plan.

John Skapars, Mark Mayer, Hubbard, Hubbard, O'Brien & Hall, Chicago, IL, for defendant, Pioneer Paint Products Inc. Employees' Defined Ben. Pension Plan and Trust.

Mark D. Erzen, Alan Bruce White, Karganis & White, Ltd., Chicago, IL, for defendant, Safety Kleen Pension Trust Fund.

David Stewart Fleming, Kathryn Elizabeth Garipay, Schaefer, Rosenwein & Fleming, Chicago, IL, Richard W. Reinthaler, Alice Jump, Susan L. Shelhorse, Dwight A. Healy, White & Case, New York City, for defendant, Schering Plough Corp. Master Retirement Plan Trust.

Arthur Weil Friedman, Robert Dickey Hamilton, James P. Bailinson, Miller, Shakman, Hamilton, Kurtzon & Shlifki, Chicago, IL, Richard G. Garrett, Elise D. Weakley, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, Miami, FL, for defendant, State Bd. of Admin. of Fla.

Stephen David Libowsky, Kenneth Michael Kliebard, Katten, Muchin & Zavis, Chicago, IL, for defendant, St. Clair Mfg. Corp. Retirement Trust.

Harold C. Hirshman, Roger C. Siske, Sonnenschein, Nath & Rosenthal, Chicago, IL, for defendant, The First Nat. Bank of Chicago.

Richard I. Loebl, Jim Beam Brands, Gary Faria, Thomas R. Cox, Miller, Canfield, Paddock & Stone, Detroit, MI, Roberta L. Goodman, American Brands, Inc., Deerfield, IL, for counter claimant, ACCO USA, Inc.–IBT Retirement Plan.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

This case emanates from First National Bank of Chicago's ("the Bank") attempt to satisfy matured redemption requests from its Institutional Real Estate Fund F ("Fund F") by distributing, to the withdrawing participant plans, cash and quitclaim deeds to undivided fractional interests in each of the Fund F real estate parcels.[1] The defendant plans rejected the proposed distribution in early 1993. The Bank subsequently filed a complaint for injunctive and declaratory relief, compelling each of the defendant plans to accept their fractional shares of Fund F real property, and directing the Trustee to manage the refused fractional shares under the terms of the Trust Instrument during the pendency of this litigation.

The defendants move to dismiss the complaint initially for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and ultimately for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).[2] For the reasons set forth below, the defendants' motion to dismiss Counts I and III is denied, and the motion to dismiss Count II is granted.

Count I of the Bank's complaint is entitled "Breach of the Trust Instrument [and] the Comptroller's Regulations and Violation of

---

1. Forty-five plans participate in Fund F, which is held by the Bank as Trustee for the First National Bank of Chicago Group Trust for Pension and Profit Sharing Trusts. This is just one of numerous pending cases collectively known as the "Fund F litigation." This suit was filed against the twenty-five investing plans which refused to accept the proposed cash plus fractional interest distribution plan. To avoid unnecessary confusion, I will refer to these defendants collectively as the "defendants" or the "defendant plans."

2. The Fort Howard Corporation Profit Sharing Retirement Plan ("Fort Howard"), the Schering Plough Corporation Master Retirement Plan Trust ("Schering Plough"), and the A.M. Castle & Co. Employee Trust and A.M. Castle & Co. Employees Profit Sharing Trust ("Castle") filed separate motions to dismiss. Other defendant Plans filed motions to dismiss essentially adopting Castle's motion and briefs, including: ACCO USA, Inc.–IBT Retirement Plan, A.J. Maggio Co. Retirement Trust, Columbia Retirement Trust, Inland Steel Industries Pension Plan & Trust, INR Beatty Lumber Co. Profit Sharing Plan, Jim Beam Brands Co. Pension Plan for Hourly–Paid Union Employees, Kroger Co. Master Retirement Trust, McCormick Pension Plan, Oakwood United Hospitals Inc. Retirement Plan for Hourly Rate Employees, Oakwood United Hospitals Inc. Retirement Plan for Salaried Employees Trust, Ortman–McCain Co., Safety Kleen Pension Trust Fund, St. Clair Manufacturing Corp. Retirement Trust, State Board of Administration of Florida, and the United Food & Commercial Workers International Union–Industry Pension Fund.

ERISA." Specifically, the Bank says that: 29 U.S.C. § 1105(a) makes the Bank a co-fiduciary of each of the defendant plans; 29 U.S.C. § 1104(a)(1)(D) requires fiduciaries to discharge their duties "in accordance with the documents and instruments governing the plan[s]"; "12 C.F.R. § 9.18(b)(6), as interpreted by the Comptroller and upheld by the Seventh Circuit, requires that in kind distribution be made by means of the grant of undivided fractional interests in each of the [Fund F] properties"; an? in rejecting the quitclaim deeds to undiv 1 fractional interests, the defendants breac..ed the Trust Instrument and their fiduciary duties in violation of § 1104(a)(1)(D).

Count II states that the Bank, as Trustee, advised the defendants that they were required by law to accept the proposed distribution and that their refusal would be interpreted as a direction to maintain the fractional interests in Fund F until 'ered otherwise by the court. The Ba⌐ ⌐ requests a judgment against each defendant plan, declaring that the rejected fractional interests remain in Fund F and that the Bank, as Trustee, retains its full powers and protection under the Trust agreement until the Court orders otherwise.[3]

■ The defendants urge that the entire complaint must be dismissed as moot because there is no justiciable case or controversy in Article III terms and, theref this Court has no federal jurisdiction. 1 ⌐ defendants argue that the case or controversy between the parties ceased to exist once the Bank decided to terminate Fund F and liquidate its properties pursuant to the Termination Plan. By letter dated April 29, 1993, the Bank advised the OCC of its intent to terminate Fund F and attached a copy of the Termination Plan.[4] Under the Plan, the Bank as trustee will establish a "Fund F Liquidating Account" of Fund F assets (excluding the Redeemed Former Participants' rejected fractional interests) 'll sell all Fund F properties "as soon as feasible and prudent," and will periodically and ratably distribute cash available after expenses, including budgeted capital improvements and operation costs. With respect to. "The Refused Fractional Interests of the Redeemed Former Participants," the Termination Plan provides as follows:

> The Trustee's Termination Plan does not and should not be understood to operate[,] to affect or override the claims, if any, of any Redeemed Former Participant. As noted above on January 15, 1993, the Trustee made a ratable distribution of cash and fractional interests in property to the Redeemed Former Participants. The Trustee asked each Redeemed Former Participant to confirm that pending resolution of the distribution by a court or otherwise the Trustee is empowered to deal with the refused fractional interests of the Redeemed Former Participants under the same terms as the Trust Instrument. Confirmation was received from each redeemed Former Participant. Consequently, pending resolution by a court or otherwise, the Trustee continues to retain the power and duties to administer the refused fractional interests of the Redeemed Former Participants in accordance with the terms of the Trust Instrument. The Trustee will administer the fractional interests refused by the Redeemed Former Participants within an "Interim Liquidation Account." The Trustee intends to jointly manage the Interim Liquidation Account and the Fund F Liquidating Account for sale purposes and for other necessary investment decisions until such time as the distribution of the rejected fractional interests is resolved by a court or otherwise. (Emphasis added.)

"Mootness can kill a lawsuit at any stage." *Steffel v. Thompson,* 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 1216 n. 10, 39 L.Ed.2d 505 (1974). A case becomes moot " 'when the

---

**3.** In Count III the bank seeks er against Harris–Hub, INR Beatty, Ortr. .lcCain, St. Clair and Anderson stating that t⌐e Bank, as the trustee of these plans, can direct these plans to accept the fractional interests. For purposes of this motion, Count III will be treated the same as Count I.

**4.** The Trust Review Committee of the Board of Directors approved the termination on April 16, 1993.

issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982).[5] To test for mootness, a court must ask whether "the relief sought, if granted, would make a difference to the legal interests of the parties (as distinct from their psyches, which might remain deeply engaged with the merits of the litigation)." *Air Line Pilots Ass'n Int'l v. UAL Corp.,* 897 F.2d 1394, 1396 (7th Cir.1990). As Judge Posner noted in *Air Line Pilots,* the mootness test functions on a continuum, and:

> it is usually possible to conjure up a set of facts under which the relief sought would make a difference to the parties. But if it would be a very little difference, then to economize on judicial resources as well as to give expression to policies thought inherent in Article III the case will be declared moot and relief withheld.

*Id.* at 1396–97.

The Bank insists that the case is not moot. It argues that the declaration (sought in Count II) will resolve a present dispute over the legal basis for the Trustee's continuing powers over the refused fractional interests and the Trustee's ability to deduct its fees. The complaint, however, mentions nothing about a dispute over Trustee fees, and a "live" controversy only exists if the Trustee's exercise of power is contested, regardless of the legal basis for that exercise. *See Air Line Pilots,* 897 F.2d at 1397 (the mootness criterion seems to imply that "it can make little difference whether a practice is unlawful for one or for several reasons, provided only that it is indeed unlawful"). The Termination Plan acknowledges (and the defendants agree) that the defendants do not contest the Bank's exercise of power as trustee over the refused fractional interests under the terms of the Trust Instrument. Furthermore, the declaration sought in Count II is embodied in the Termination Plan. The Termination Plan provides that the fractional interests in Fund F properties rejected by

the defendants remain subject to the terms of the Trust Instrument and, consequently, the Bank as trustee retains the power and duties to administer these assets under the Trust Instrument. This Court "is not empowered to decide moot questions, or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it." *California v. San Pablo & T.R. Co.,* 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747 (1893). Count II, therefore, is dismissed as moot.

The question still remains whether the Bank's resolution to terminate Fund F and sell its assets, including the refused fractional interests in the "Interim Liquidation Account," moots the ERISA claims in Count I (assuming, of course, the claims were pleaded properly). According to the defendants, the Bank's Termination Plan has made it unnecessary and factually impossible for this Court to issue an injunction compelling the defendants to accept the proposed fractional interests in Fund F real estate. The Bank, however, maintains that the defendants' "illegal acts" in refusing the distribution of fractional interests gave rise to an actual controversy; these acts constituted a breach of ERISA and the Trust Instrument, and this lawsuit is a reasonable effort to remedy those breaches. The Bank also insists that the Termination Plan does not render the complaint moot because there still remain approximately 40 properties that have not been sold and a decision by this Court will "make a difference to the legal interests of the parties."

It is not difficult to envision how an injunction compelling the defendants to accept fractional interests in property would make a difference to the parties. The Termination Plan provides that unless a court determines otherwise, the fractional interests will remain in the "Interim Liquidation Account" until sold. If this Court grants the injunction, the defendants legally will be entitled to the frac-

---

**5.** The *Murphy* court also recognized an exception to this rule in cases that are "capable of repetition yet evading review." *Id.* at 481–82, 102 S.Ct. at 1183. The Bank, however, does not argue that this exception applies. When a party challenges jurisdiction, the burden of proof is on the party asserting federal jurisdiction. *Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1942); *Selcke v. New England Ins. Co.,* 2 F.3d 790, 792 (7th Cir.1993).

tional interests (which the Bank undoubtedly will tender) instead of a ratable share in cash after expenses under the Termination Plan. Whether dismissal of Count I is proper, however, depends on where, along Posner's "mootness continuum," this case falls. This depends on the essence of the ERISA claims and whether the "difference" resulting from the injunction will be so little that judicial economy and the policies underlying Article III dictate dismissal of Count I as moot.

The defendants urge that Count I: (1) impermissibly seeks an advisory opinion regarding the Bank's exercise of its fiduciary duty in satisfying the withdrawal requests; (2) fails to state a claim against the defendants for breach of a fiduciary duty under ERISA; and (3) cannot state a claim for violation of OCC regulations. They contend the Bank actually seeks a preliminary approval of its redemption scheme (approval which the OCC refused to give) and, in effect, a declaration of non-liability for any future alleged breach of the Bank's fiduciary duties in satisfying the matured withdrawal requests. Although the history of this case makes it more likely than not that the Bank filed suit with this motive in mind, this Court still must ask whether the Bank has stated a federal cause of action so that this Court can exercise jurisdiction over the matter.

The Bank alleges in its complaint that subject matter jurisdiction (except as to the State Board and Illinois Municipal Retirement Fund) is predicated on 29 U.S.C. §§ 1104 and 1105, 28 U.S.C. § 2201, and 28 U.S.C. § 1331. The defendants correctly point out that none of these statutory sections provide a federal private cause of action. Sections 1104 and 1105 define a fiduciary's standard of care and duty to police breaches by co-fiduciaries. *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 145–48, 105 S.Ct. 3085, 3092–93, 87 L.Ed.2d 96 (1985) (ERISA's fiduciary duty provisions do not give rise to an implied right of action

beyond those created in § 1132). Section 2201 is the Declaratory Judgment Act which only affords an additional form of relief and does not confer subject matter jurisdiction. *Lawline v. American Bar Ass'n,* 956 F.2d 1378, 1387 (7th Cir.1992). Finally, section 1331 simply declares that claims arising under federal law may be brought in federal court without regard to the citizenship of the parties or the amount in controversy. 28 U.S.C. § 1331 (1991).[6]

 This Court can exercise subject matter jurisdiction here if the complaint states a claim under ERISA. 29 U.S.C. § 1132(e)(1) (1988). Section 1132 provides the exclusive mechanism for civil enforcement of ERISA's substantive obligations. 29 U.S.C. § 1132(a) (1988); *Russell,* 473 U.S. at 145–58, 105 S.Ct. at 3092–98; *Giardono v. Jones,* 867 F.2d 409, 413 (7th Cir.1989). The Bank's failure to cite § 1132 in its complaint is not fatal to its ability to assert a private cause of action under ERISA. The common law "form of action" pleading and code pleading were abandoned long ago in favor of a "new, latitudinarian approach." *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992). Today a complaint filed in federal court need not identify the appropriate statute or even the appropriate legal theory to survive a motion to dismiss. *Id.* Instead what it must do is plead a "claim for relief," and what this Court must determine is "whether relief is possible under any set of facts that could be established consistent with the allegations" in the complaint. *Id.* In turn, this Court must accept as true all well-pleaded factual allegations in the complaint, along with all reasonable inferences drawn in favor of the plaintiff, and dismiss the complaint only if it is beyond doubt that the Bank can prove no set of facts in support of its ERISA claims that will entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

---

**6.** The general federal question jurisdictional statute, 28 U.S.C. § 1331, may provide a basis for subject matter jurisdiction over those suits relating to an ERISA plan and involving issues which Congress may have overlooked; "virtually every suit relating to an ERISA plan ... can be said to arise under federal law, and hence to be within the jurisdiction of the federal courts by virtue of

§ 1331." *See Winstead v. J.C. Penney Co., Inc.,* 933 F.2d 576, 579–80 (7th Cir.1991). This Court, however, expresses no opinion on whether subject matter jurisdiction over this case is proper under § 1331. The Bank has stated a claim under 29 U.S.C. § 1132(a)(3), and this Court has exclusive jurisdiction of this civil matter under 29 U.S.C. § 1132(e)(1).

The Bank, as a fiduciary, can bring a claim under sections 1132(a)(2) and 1132(a)(3). Section 1132(a)(2) provides a cause of action for "appropriate relief under section 1109," *i.e.*, liability for breach of fiduciary duty. Suits for breach of fiduciary duty are permitted only against persons who act as a fiduciary with respect to a plan or trust covered by ERISA. *Brandt v. Grounds*, 687 F.2d 895, 897 (7th Cir.1982) (quoting 29 C.F.R. § 2509.75–8 (FR–16A)). A person acts as a fiduciary "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or respecting management or disposition of its assets, ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A) (1988). In essence, "ERISA makes the existence of discretion a *sine qua non* of fiduciary duty." *Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126, 129 (7th Cir.1992); *Associates in Adolescent Psychiatry, S.C. v. Home Life Ins. Co.*, 941 F.2d 561, 568–69 (7th Cir.1991); *Leigh v. Engle*, 727 F.2d 113, 133 (7th Cir. 1984) (fiduciary obligation is limited to extent of actual authority) (quoting ERISA Interpretative Bulletin 75–8, 29 C.F.R. § 2509.75–8).

Whether a person (or entity in this case) qualifies as a fiduciary within the meaning of ERISA is a question of law. *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1262, 1266 n. 6 (7th Cir.1985). The defendant plans argue that they have no discretion to manage, control, or dispose of Fund F assets and, therefore, neither qualify as "fiduciaries" nor have any fiduciary duty with respect to Fund F assets under 29 U.S.C. §§ 1104(a)(1)(D) and 1002(21). The Ninth Circuit in *Acosta v. Pacific Enters.*, 950 F.2d 611 (9th Cir.1992), held that a plan (as an entity) cannot be sued for breach of fiduciary duty because it cannot, as an entity, act as a fiduciary with respect to its own assets. *Id.* at 618.[7] While it is difficult to envision a situation in which a plan (not its administrators) could act as a fiduciary, this Court need not decide whether a plan can or cannot act as a fiduciary within the meaning of ERISA.[8] Even assuming a plan can act as a fiduciary, I find that the defendant plans in this case are not fiduciaries with respect to the management, control or administration of Fund F assets. The Trust Instrument vests the Bank with exclusive power to manage and control Fund F assets. The defendant plans, having no discretion to manage and control Fund F assets, have no fiduciary obligation with respect to the management and control of Fund F assets.

The Bank still insists that the Trust Instrument and OCC regulations impose a duty on the defendants to accept the proposed fractional interests in Fund F real property. Implicitly, the Bank argues that the defendant plans, which includes its administrators,[9] are fiduciaries by virtue of its discretion to administer, manage, and control their respective plans and that the plan administrators breached their fiduciary duty under § 1104 by not administering the plan "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1) (1988). Even if the plans are fiduciaries with respect to the administration

---

**7.** The Ninth Circuit did recognize that while a plan cannot be sued for breach of fiduciary duty *per se*, it is proper to name a plan as a defendant in a suit alleging breach of fiduciary duty "[t]o the extent that a plaintiff seeks 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Id.* (citing 29 U.S.C. §§ 1132(a)(1)(B) & 1132(d)). In other words, a plan may be named as a defendant in a suit to obtain relief under § 1132(a)(1)(B). This section, however, is inapplicable because the Bank is neither suing as a participant or beneficiary nor seeking to recover benefits or to obtain information from an administrator.

**8.** *See Winstead v. J.C. Penny Co., Inc.*, 933 F.2d 576, 579 (7th Cir.1991) (acknowledging, without resolving, discord among circuits regarding whether a plan is a fiduciary within the meaning of ERISA).

**9.** *See Saramar Aluminum Co. v. Pension Plan for Employees of the Aluminum Indus. & Allied Indus.*, 782 F.2d 577 (6th Cir.1986) (§ 1132(a)(3)(B)(ii) suit naming plan as defendant construed as suit against plan administrators).

or management of their plans, their obligations as fiduciaries "pertain[ ] only to the discretion thus created." *Associates in Adolescent Psychiatry,* 941 F.2d at 569. The Bank contends that the plans had no discretion to reject the proposed distribution and must accept the fractional interests. If such a duty to accept the fractional interests exists, it is contractual or regulatory and not "fiduciary." The Bank, therefore, has not properly pleaded a claim for breach of fiduciary duty under § 1132(a)(2).

■ Essentially, what the Bank argues is not that it states a claim under § 1132(a)(2), but that it states a claim under § 1132(a)(3). Under this subsection, fiduciaries can sue "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3) (1988). Section 1132(d)(1) specifically provides that an employee benefit plan may be sued as an entity under this subchapter, and the viability of a suit under § 1132(a)(2) does not depend on the defendants' status as fiduciaries. *Winstead v. J.C. Penny Co., Inc.,* 933 F.2d 576, 579 (7th Cir.1991). Furthermore, this section permits a fiduciary to enforce what it

considers to be "the requirements of ERISA and the agreement of the parties formulated in the Plan itself." *Saramar Aluminum Co. v. Pension Plan for Employees of the Aluminum Indus. & Allied Indus.,* 782 F.2d 577, 581 (6th Cir.1986) [10]; *Winstead,* 933 F.2d at 579 (complaint stated a claim under § 1132(a)(3)(B) for a declaratory judgment to enforce the coordination-of-benefits provision of the Central States plan).

The Bank here has filed suit to enforce what it considers to be the requirements of the Trust Instrument and OCC regulations. The Trust Instrument and OCC regulations are incorporated into each participating ERISA plan. A suit to enforce the Trust Instrument and OCC regulations, therefore, is a suit to enforce the terms of the ERISA plans themselves. Accordingly, this suit falls squarely within the literal terms of 29 U.S.C. § 1132(a)(3), and this Court has exclusive jurisdiction over the matter under 29 U.S.C. § 1132(e)(1). The exercise of subject matter jurisdiction over this case would promote the "goals of ERISA and, more broadly, [ ] facilitat[e] the expeditious and economical administration of justice." *Winstead,* 933 F.2d at 579. The defendant plans' motion to dismiss Count I (and Count III) as moot or for failure to state a claim is denied.[11]

10. The Sixth Circuit in *Saramar* concluded that the suit filed against the Plan was a suit against the Plan's "Administrative Board," *i.e.,* "those who must act for the plan to administer it and to effectuate its policies." *Saramar,* 782 F.2d at 581. The court held that the Plan administrators were fiduciaries for purposes of filing a suit under § 1132(a)(3)(B)(ii) because they had "full power and authority to carry out all the Plan's provisions." Contrary to the Bank's assertion, this case does not permit the conclusion that the defendant plans (and their administrators) are fiduciaries for purposes of filing suit under another section, § 1132(a)(2).

11. The defendant plans additionally argue that dismissal is proper because the Bank seeks only injunctive relief and has failed to plead that it has an inadequate remedy at law or will suffer irreparable harm. The defendants, however, rely only on *Citizens Concerned for Separation of Church & State v. Denver,* 628 F.2d 1289 (10th Cir.1980), which says nothing about pleading a claim for injunctive relief under § 1132(a)(3). The literal wording of the ERISA statute itself indicates that injunctive relief is a proper remedy if the alleged violation of ERISA or plan provisions is established. 29 U.S.C. § 1132(a)(3)

(1988). Indeed, it indicates that a plaintiff suing under § 1132(a)(3) is only entitled to injunctive relief or "other appropriate equitable relief." *See, e.g., Sokol v. Bernstein,* 803 F.2d 532, 534–38 (9th Cir.1986) (damages for emotional distress and other extra-contractual damages are unavailable under § 1132(a)(3)); *Kleinhans v. Lisle Sav. Profit Sharing Trust,* 810 F.2d 618, 627 (7th Cir. 1987) (punitive damages not recoverable under § 1132(a)(3)); *cf. Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 148, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985) (extra-contractual damages are unavailable under § 1132(a)(2) for violation of § 1109(a)). This Court finds that the Bank has properly pleaded a claim for injunctive relief, a remedy expressly provided by the statute.

The defendant plans also contend that neither the Trust Instrument nor OCC regulations require them to accept fractional interests in Fund F real property and that such an acceptance of worthless (I think they mean illiquid) property would be in breach of their fiduciary duty to the plan beneficiaries and participants. These arguments are better directed to a motion for summary judgment.

Finally, the defendants insist that if any claim survives their motions to dismiss, this Court should order the Bank pursuant to Rule 19(a) to join the non-withdrawing plans whose interests will be affected by the distribution of fractional shares in the real estate held by Fund F. Joinder of the non-withdrawing plans is feasible. The dispute here concerns whether joinder is necessary because the non-withdrawing plans have "an interest relating to the subject of the action and ... the disposition of the action in the[ir] absence may [ ] as a practical matter impair or impede the[ir] ability to protect that interest." FED.R.CIV.P. 19(a). This interest must be a "legally protected interest [in the subject of the action], and not merely a financial interest or interest of convenience." 3A MOORE'S FEDERAL PRACTICE ¶ 19.07[2], at 19–99 (2d ed.1992).

In a sense, the non-withdrawing plans have a financial interest in the outcome of this litigation; the Bank wants an injunction ordering distribution of fractional interests in Fund F real estate held in trust for the benefit of all participating plans. This interest in Fund F real estate, likewise, is legally cognizable by virtue of the Trust Instrument, just as the interest of parties to a contract involving land. *See Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D.C.Cir. 1983) ("an action seeking rescission of a contract must be dismissed unless all parties to the contract, and others having a substantial interest in it, can be joined"). The difficulty in this case is that the "subject" of this action does not encompass all Fund F real estate, rather only those fractional interests in real estate rejected and now held in the "Interim Liquidation Account" pursuant to the Termination Plan. The non-withdrawing plans have a legally cognizable interest only in the Fund F real estate being held in the "Fund F Liquidating Account," which excludes "the Redeemed Former Participants' rejected fractional interests" and which is being sold "as soon as feasible and prudent" with periodical and ratable distributions of cash available after expenses. Accordingly, this Court finds that the non-withdrawing participants need not be joined under Rule 19(a).

In sum, the motion to dismiss Counts I and III is denied. Count II is dismissed as moot. Finally, the defendants' request for an order requiring joinder of the non-withdrawing plans as defendants is denied.