■ YONKERS RACING CORPORATION, Appellant, v CATSKILL REGIONAL OFF-TRACK BETTING CORPORATION, Respondent. (Action No. 1.) NEW YORK RACING ASSOCIATION, INC., Appellant, v

CATSKILL REGIONAL OFF-TRACK BETTING CORPORATION, Respondent, and YONKERS RACING CORPORATION, Appellant. (Action No. 2.) CATSKILL REGIONAL OFF-TRACK BETTING CORPORATION, Respondent, v NEW YORK RACING ASSOCIATION, INC., Appellant. (Action No. 3.)—In three consolidated actions, *inter alia,* for a judgment declaring that the New York Racing Association, Inc., has the right to simulcast races conducted at its racetracks to the Yonkers Racing Corporation, the Yonkers Racing Corporation appeals from (1) an order of the Supreme Court, Westchester County (Delaney, J.), dated April 12, 1988, which denied its motion for a preliminary injunction, *inter alia,* barring the Catskill Regional Off-Track Betting Corporation from terminating a contract dated March 5, 1986, wherein it consented to simulcast broadcasting by the New York Racing Association, Inc., to the Yonkers Raceway, (2) an order and judgment (one paper) of the same court, entered April 12, 1988, which, *inter alia,* granted the cross motion of the Catskill Regional Off-Track Betting Corporation for judgment as a matter of law in its favor, declared that, pursuant to the contract dated March 5, 1986, the Catskill Regional Off-Track Betting Corporation had the unilateral power to revoke its consent to the simulcast broadcasting arrangement between the Yonkers Racing Corporation and the New York Racing Association, Inc., and denied the motion of the Yonkers Racing Corporation for a preliminary injunction barring the Catskill Regional Off-Track Betting Corporation from terminating that contract, and (3) an order of the same court, entered June 15, 1988, which denied the motion of the Yonkers Racing Corporation to renew its motion for a preliminary injunction; and the Yonkers Racing Corporation and the New York Racing Association, Inc., separately appeal, as limited by their briefs, from stated portions of an order of the same court, entered November 23, 1988, which, *inter alia,* denied the motion of the New York Racing Association, Inc., for a preliminary injunction barring the Catskill Regional Off-Track Betting Corporation from withdrawing its written consent to simulcast broadcasting to the Yonkers Raceway, and from taking any action to interfere with simulcast broadcasting by the New York Racing Association, Inc., to the Yonkers Raceway, and granted the motions by Catskill Off-Track Betting Corporation for a preliminary injunction barring the Yonkers Racing Corporation from receiving simulcast broadcasts from the New York Racing Association, Inc., and a preliminary injunction barring the New York Racing Association, Inc., from discontinuing simulcast broadcasts to it, dismissed the

complaint in action No. 2 insofar as it is asserted against Catskill Regional Off-Track Betting Corporation, and failed to rule on a motion by the Catskill Regional Off-Track Betting Corporation for a protective order, and a cross motion by the New York Racing Association, Inc., to compel compliance with a notice for production of documents dated May 27, 1988, and a notice to take a deposition on oral questions, also dated May 27, 1988.

Ordered that the appeal from the order dated April 12, 1988, is dismissed; and it is further,

Ordered that the order and judgment is reversed, on the law, the motion of the Yonkers Racing Corporation for a preliminary injunction barring the Catskill Regional Off-Track Betting Corporation from withdrawing its consent to simulcast broadcasting by the New York Racing Association, Inc., to the Yonkers Raceway, is granted, on condition that the Yonkers Racing Corporation files in the office of the Clerk of the Supreme Court, Westchester County, an undertaking with a corporate surety pursuant to CPLR 6312 (b), and a copy of the same upon Catskill Regional Off-Track Betting Corporation, the cross motion of Catskill Regional Off-Track Betting Corporation is denied, and the matter is remitted to the Supreme Court, Westchester County, for the purpose of setting the amount of the undertaking and the time within which Yonkers Racing Corporation shall be required to file the undertaking; and it is further,

Ordered that the appeal from the order entered June 15, 1988, is dismissed as academic, in light of our determination on the appeal from the order and judgment; and it is further,

Ordered that the order entered November 23, 1988, is reversed insofar as appealed from, on the law, the motions by the Catskill Regional Off-Track Betting Corporation for a preliminary injunction barring the Yonkers Racing Corporation from receiving simulcast broadcasts from the New York Racing Association, Inc., and a preliminary injunction barring the New York Racing Association, Inc., from discontinuing simulcast broadcasts to it are denied, and the motion of the New York Racing Association, Inc., for a preliminary injunction barring the withdrawal by the Catskill Regional Off-Track Betting Corporation of its consent to simulcast broadcasting to Yonkers Raceway and taking any action to interfere with simulcast broadcasting by the New York Racing Association, Inc., to Yonkers Raceway, is granted, on condition that the New York Racing Association, Inc., files in the office of the Supreme Court, Westchester County, on undertaking with a

corporate surety pursuant to CPLR 6312 (b), and serve a copy of the same on the Catskill Regional Off-Track Betting Corporation, and the matter is remitted to the Supreme Court, Westchester County, for the purpose of setting the amount of the undertaking and the time within which the New York Racing Association, Inc., shall be required to file the undertaking; and it is further,

Ordered that the motion of Catskill Regional Betting Corporation for a protective order is denied, and the cross motion of the New York Racing Association, Inc., to compel compliance with the notice for production of documents dated May 27, 1988, and a notice to take a deposition on oral questions, also dated May 27, 1988, is granted, the time for compliance with the notice for production of documents is extended until 30 days after service upon Catskill Regional Off-Track Betting Corporation, of a copy of this decision and order, with notice of entry, and the oral deposition of Donald J. Groth, president and chief executive officer of Catskill Regional Off-Track Betting Corporation, shall take place upon written notice by New York Racing Association, Inc., to it of not less than 10 days of the time and place of the deposition, or at such time and place as the parties may agree; and it is further,

Ordered that the matter is remitted to the Supreme Court, Westchester County, for further proceedings consistent herewith before a different Justice; and it is further,

Ordered that the appellants, appearing separately and filing separate briefs, are awarded one bill of costs, payable by the respondent.

The appeal from the intermediate order dated April 12, 1986, must be dismissed because the right of direct appeal therefrom terminated with the entry of the order and judgment (see, Matter of Aho, 39 NY2d 241, 248). The issues raised on appeal from the order dated April 12, 1986, are brought up for review and have been considered on the appeal from the order and judgment (CPLR 5501 [a] [1]).

In 1984 the Legislature added article X to the Racing, Pari-Mutuel Wagering and Breeding Law which encouraged experimentation, from July 1, 1984, through June 30, 1990, with the closed circuit "simulcast" (i.e., telecasts of live audio and visual signals) of horse races from the tracks where they occurred to other tracks and off-track betting (hereafter OTB) parlors throughout the State for pari-mutuel wagering purposes. In order to offset the concern that simulcasting to one track or OTB region would disproportionately diminish the

wagering volume of a neighboring region, the Legislature prescribed a scheme, *inter alia,* whereby the New York Racing Association, Inc. (hereinafter NYRA) (the nonprofit owner of Aqueduct, Belmont and Saratoga racetracks) could telecast its afternoon thoroughbred races to Yonkers Raceway (a private, for-profit racetrack, featuring nighttime harness races operated by the Yonkers Racing Corporation) only with "the written consent" of its potentially affected neighbors, the New York City Off-Track Betting Corporation and the Catskill Regional Off-Track Betting Corporation (hereinafter Catskill) (Racing, Pari-Mutuel Wagering and Breeding Law § 1007 [5]). These OTB corporations are public benefit corporations created by the Racing, Pari-Mutuel Wagering and Breeding Law article V, which conduct off-track pari-mutuel wagering on horse races, and which share a percentage of their revenues with the governments of the counties in which they operate. Catskill has some 30 OTB branch offices distributed throughout the Counties of Broome, Chemung, Chenango, Delaware, Dutchess, Orange, Putnam, Rockland, Sullivan, Tioga, Tompkins, Ulster and Westchester.

On or about October 11, 1985, NYRA contracted to transmit its simulcast of afternoon thoroughbred races to Yonkers Raceway in exchange for substantial revenues. At about the same time, NYRA negotiated with Catskill, to which it had been sending its simulcasts under short interim agreements, to enter into a long-term arrangement for transmitting its simulcasts to Catskill's OTB parlors for concessionary prices. The contract contemplated Catskill's written "consent" to NYRA's simulcasts to the Yonkers Raceway in paragraph SIXTH of the agreement, which provided: "The parties recognize that, pursuant to the Racing Law, CATSKILL's written consent is required in order to permit NYRA to transmit its simulcast signal, for pari-mutuel wagering purposes, into a receiving harness track in Westchester County [i.e., Yonkers Raceway]. The parties further recognize that CATSKILL's written consent to such simulcasts to a receiving harness track is a material consideration of this Agreement. Accordingly, CATSKILL agrees to issue such written consent, on a timely basis and in a sufficient form, pursuant to applicable statute, rule or regulation, upon NYRA's request therefore *[sic]*, but subject to a corresponding agreement between CATSKILL and such receiving harness track in Westchester County". The parties do not dispute that this last "subject to" clause was inserted by Catskill, purportedly because of Catskill's concern that the Yonkers Racing Corporation might not be willing to make

simulcasts of its nighttime harness races reasonably available to Catskill. The agreement also provided that either party could terminate it prior to January 30, 1990, upon three months written notice by certified mail, and the contract concluded with a broadly worded merger clause. NYRA has contended, and Catskill has not denied, that the contract was still being negotiated in February 1986 although it was back-dated to September 1, 1985 (its effective dates were October 1, 1985 until January 30, 1990) in order to give Catskill the benefit of five additional months of NYRA's exceptionally favorable rates.

On March 5, 1986, Catskill concluded an agreement with the Yonkers Racing Corporation (hereinafter Yonkers) by whose terms Yonkers would simulcast its nighttime harness races to Catskill, also through January 30, 1990, and also at concessionary rates. Paragraph SEVENTH of this agreement provided that "after August 1, 1987, either party may cancel this agreement upon six months written notice to the other party". According to paragraph EIGHTH: "CATSKILL agrees and consents to YONKERS entering into a contract for, and receiving simulcasts of, all New York Racing Association races (and races from other tracks which are simulcast into New York Racing Association tracks) for the purpose of pari-mutuel wagering".

Simulcasting commenced soon thereafter. The NYRA-to-Yonkers simulcasting experiment, which began on or about March 24, 1986, was highly successful. Between May and July 1986 Catskill complained to Yonkers that it was losing busi-ness, but indicated that it would "satisfy" all parties if Yonk-ers paid it $2,500 for each broadcasting day. When Yonkers failed to agree to this arrangement, Catskill wrote to Yonkers on August 3, 1987, declaring its intention to cancel their agreement in six months, as permitted by paragraph SEVENTH of their contract. On February 2, 1988, Catskill notified Yonk-ers, NYRA and the New York State Racing & Wagering Board that, effective February 5, 1988, Yonkers was "no longer authorized to receive NYRA simulcast signals because such reception was no longer consented to by Catskill".

Three lawsuits were thereafter commenced by Yonkers, Catskill, and NYRA, respectively, which were consolidated by order of the Supreme Court, Westchester County, dated Au-gust 22, 1988. In the orders and the order and judgment appealed from, the Supreme Court, Westchester County, *inter alia,* ruled that the contracts at issue were clear and unambig-uous, so that parol evidence was not admissible to construe

them, determined that Catskill could and effectively did terminate its contract with Yonkers, thereby withdrawing its "consent" to any further simulcasts from NYRA to Yonkers, granted Catskill an injunction halting simulcasts from NYRA to Yonkers, barring NYRA from discontinuing its simulcasts to Catskill, and dismissed the complaint by NYRA in action No. 2 insofar as it is asserted against Catskill.

It is uncontested that despite the instant litigation, Yonkers has consistently received NYRA's simulcast signal except for two days in May 1988, while Catskill has received the simulcast transmissions generated by both NYRA and Yonkers without any interruption whatever, from the time of the purported termination of the Catskill-Yonkers contract on February 5, 1988, to the present day.

On appeal, NYRA and Yonkers submit that the Supreme Court erred in concluding that paragraph SIXTH of the NYRA-Catskill contract—requiring that Catskill "consent" to NYRA's simulcast of NYRA's races to Yonkers, "subject to" a "corresponding agreement" between Catskill and Yonkers—was unambiguous. We agree. A contract will be found to be ambiguous where it is "susceptible of differing interpretations." If more than one construction is possible, "the court can look to the surrounding facts and circumstances to determine the intent of the parties," and the parol evidence rule does not apply (67 *Wall St. Co. v Franklin Natl. Bank,* 37 NY2d 245, 248). In the instant case, the "subject to" language of paragraph SIXTH is sufficiently ambiguous to require that extrinsic evidence be considered in order to ascertain the intention of the parties. It is not clear whether the NYRA-Catskill contract was to be "subject to" the execution of a "corresponding agreement" between Catskill and Yonkers, or "subject to" the continued existence of such a "corresponding agreement." The precise character of the "corresponding agreement" intended by the parties is equally ambiguous, as the words could well signify any agreement resulting in the continued reception by Catskill of Yonkers' harness racing simulcast signal.

Moreover, a review of the record reveals that Catskill did not meet its burden of demonstrating a likelihood of ultimate success on the merits, irreparable injury if a preliminary injunction did not issue, or that a balancing of the equities favored its position. Therefore, it was error for the Supreme Court to have granted Catskill's motions for preliminary injunctive relief and those motions are denied.

In contrast, NYRA and Yonkers have demonstrated that

when the circumstances surrounding the execution of the ambiguous contracts at bar are taken into account, along with the principles of waiver and estoppel relative to Catskill's continued reception for purposes of pari-mutuel betting of the simulcast signals transmitted by both NYRA and Yonkers, there is a strong likelihood that they will succeed on the merits. In addition, NYRA and Yonkers have submitted proof that without a preliminary injunction they are faced with imminent, irreparable injury to an established and prospering enterprise *(Finger Lakes Health Sys. Agency v St. Joseph's Hosp.,* 81 AD2d 403) that far outweighs any possible damage (we note that none has been demonstrated) to Catskill should Catskill be restrained from interfering with the NYRA-to-Yonkers simulcasts *(Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp.,* 70 AD2d 1021). Under the circumstances of this case, it is appropriate to grant a preliminary injunction to NYRA and Yonkers in order to maintain the status quo until a decision is reached on the merits *(Cut Corners Corp. v Barterama Corp.,* 83 AD2d 948; *Gambar Enters. v Kelly Servs.,* 69 AD2d 297).

In the absence of any motion therefor, or of prior notice by the court to NYRA, it was error for the Supreme Court, to grant Catskill summary relief dismissing the complaint in action No. 2 against it *(Mihlovan v Grozavu,* 72 NY2d 506).

Finally, there is no merit to Catskill's contention that NYRA rendered its appeal moot by mailing Catskill a notice of termination on September 15, 1988. Catskill itself has contested the effectiveness of that notice, and the notice was followed, on its effective termination date, by an offer tendering deferral of contract termination. The acceptance (or not) of the notice of termination by Catskill is the subject of another lawsuit now pending in Federal court. Kooper, J. P., Harwood, Balletta and Miller, JJ., concur.