In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1493

International Armor
& Limousine Company,

Plaintiff-Appellant,

v.

Moloney Coachbuilders, Inc.,

Defendant, Third-Party
Plaintiff-Appellee.

v.

Earle F. Moloney, et al.,

Third-Party Defendants-Appellants.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 98 C 5898--John A. Nordberg, Judge.

Argued October 24, 2001--Decided November 26, 2001


   Before Harlington Wood, Jr., Coffey, and
Easterbrook, Circuit Judges.

   Easterbrook, Circuit Judge.  Earle F.
Moloney owes his fame and fortune to
success in the limousine, armored car,
and custom auto rebuilding business. In
1986 he sold his limousine assets,
together with the name "Moloney Coach
Builders", to Jacques Moore, who
incorporated Moloney Coachbuilders, Inc.,
to carry on the business. Earle agreed
not to compete for five years in the
stretch limousine business but reserved
the right to make armored limousines and
custom vehicles extended by less than 20
inches. Disputes ensued. Earle Moloney
contended that Moloney Coachbuilders had
acquired the right to use "Moloney Coach
Builders" as a corporate name but not as
a trademark for its products; Earle also
contended that he, rather than Moloney
Coachbuilders, retained the business's
corporate history (such as the right to
say "in business since 1969" and to brag
about limousines made for heads of
state). Litigation ensued, a judge
resolved several issues on the pleadings,

see Moloney v. Centner, 727 F. Supp. 1232 (N.D. Ill. 1989), and the rest were settled in 1990, with Moloney Coachbuilders prevailing on all central issues.

   More disputes erupted after the no-competition clause expired and Earle reentered the armored stretch limousine business. Advertisements for Earle's new firm, International Armor & Limousine Company, carried phrases such as "The world's standard in extended limousines was created by E.F. Moloney, the pioneer in the stretch limousine industry" and "A Moloney Owned Entity". After Moloney Coachbuilders protested the use of the Moloney name in connection with Earle's limousine business, International Armor filed this suit, seeking a declaratory judgment that use of these and similar phrases does not violate sec.43 of the Lanham Act, 15 U.S.C. sec.1125, by making a confusingly false claim of origin. Moloney Coachbuilders responded with a counterclaim (plus a third-party claim against Earle and two of his other firms) contending that Earle's use of his name and corporate history in connection with stretch limousines (armored or not) violates the 1986 contract of sale, the 1990 settlement, and the Lanham Act. The district court concluded that Earle Moloney's use of his name in connection with any stretch limousine business violates the 1990 settlement agreement. Earle and his firms have appealed.

   Our first question is whether they have anything to appeal from. The judgment entered by the district court provides:

IT IS HEREBY ORDERED AND ADJUDGED that Enter memorandum Opinion and Order. For the foregoing reasons, this court grants the amended motion for attorneys [sic] fees and orders Earle F. Moloney to pay Moloney Coachbuilders, Inc. $70,521.84 in fees and costs. The original motion is denied as moot. This court also grants the motion for a permanent injunction for the reasons stated herein [sic: "and" missing?] enjoins Eale [sic] F. Moloney, International Armor & Limousine, Limousine Werks, and Chicago Armor & Limousine, their officers, agents, servants, employees, attorneys and all other persons in action [sic: active?] concert or participation with them.

In addition to the multiple references to other documents, which should not appear in a judgment, see Reytblatt v. Denton, 812 F.2d 1042 (7th Cir. 1987), this judgment dangles. Earle Moloney and firms are enjoined, but from doing what? The judgment does not say. This is the second time the district court violated Fed. R. Civ. P. 65(d) in the case; an earlier "standstill order" never was reduced to writing, a problem that the judge acknowledged, 2000 WL 640883 (N.D. Ill. Mar. 21, 2000). Complete failure to specify the terms of a decision makes appeal impossible; there is no order adverse to the appellant, no possibility of penalties for noncompliance, and thus nothing to review. See Hispanics United of DuPage County v. Addison, 248 F.3d 617 (7th Cir. 2001); Bates v. Johnson, 901 F.2d 1424 (7th Cir. 1990); Bethune Plaza, Inc. v. Lumpkin, 863 F.2d 525 (7th Cir. 1988). But when the terms may be gleaned from other sources, there is only a violation of Rule 65, which is correctable on appeal. See Chathas v. Local 134 IBEW, 233 F.3d 508, 512-13 (7th Cir. 2000); Metzl v. Leininger, 57 F.3d 618 (7th Cir. 1995). The district judge's memorandum order of February 20, 2001, contains terms that the judge evidently meant to be used as an injunction; unfortunately the court as an institution did not ensure that these were reflected in a formal judgment. The result is appealable--but it will not be necessary to remand for compliance with Rule 65(d), because now that our jurisdiction is secure we hold that the district court lacked subject-matter jurisdiction.

The problem is simple: This is a contract dispute, and although the stakes may exceed $75,000 all litigants arecitizens of Illinois. The contracts of 1986 and 1990 are about trademarks, so a claim under the Lanham Act may be derivative of the rights conferred. Whichever side owns the marks may use them, and whichever side does not own them is at risk under the Lanham Act as well as the law of contract. Many federal statutes create property rights that may become the subject of ownership disputes: copyright law, patent law, trademark law, and a score of licensing systems. Any fight about ownership could be recharacterized as a claim for redress under federal law. For example, if A sells a patent to B, and A then practices

the invention without B's consent, a suit alleging patent infringement may conceal a dispositive contract issue (A may defend the infringement action by saying that the contract is invalid). If the outcome of a suit nominally under federal law depends entirely on the state law of contracts, does the dispute come within the federal-question jurisdiction of 28 U.S.C. sec.1331, which applies to "all civil actions arising under the Constitution, laws, or treaties of the United States" (emphasis added)?

Osborn v. Bank of the United States, 22 U.S. (9 Wheat.) 738, 822-28 (1824), gives "arising under" in Article III of the Constitution the broadest possible meaning, extending the grant to every case in which federal law furnishes a necessary ingredient of the claim even if this role is distantly related to the parties' dispute. Our case arises under the trademark laws in Osborn's sense. But the Supreme Court has long given a narrower meaning to "arising under" in statutes defining the jurisdiction of the district courts. See, e.g., Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804 (1986); Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1 (1983); Shulthis v. McDougal, 225 U.S. 561, 569 (1912). In Merrell Dow, for example, the plaintiff's success depended on a favorable interpretation of federal drug-safety laws; but the Court observed that state law supplied the right to recover damages for torts and held that the presence of a federal issue in a claim that depended on state law did not make the claim one "arising under" federal law.

Professor Mishkin's appraisal remains apt: A suit comes within federal jurisdiction under sec.1331 when a substan-tial claim is founded directly on federal law. See Paul J. Mishkin, The Federal "Question" in the District Courts, 53 Colum. L. Rev. 157, 160-65 (1953). That leaves much play in the joints: What is "substantial," and how "direct" is direct enough? But it is a more comprehensive and nuanced approach than Justice Holmes's statement that a "suit arises under the law that creates the cause of action." American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916). Many other opinions discuss the limitations of that approach, and we

add that under the Federal Rules of Civil Procedure the concept of "cause of action" as Holmes used it--a reference to a code-pleading regime in which law was essential to the plaintiff's complaint-- has vanished from federal law and been replaced by notice pleading, which need not specify a source of law. See Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073 (7th Cir. 1992); Bennett v. Schmidt, 153 F.3d 516 (7th Cir. 1998). Under the Federal Rules, courts rather than parties decide which rules of law govern the disputes. This changes the focus of the "arising under" jurisdiction from the contents of the complaint to the attributes of a successful claim. This is why decisions such as Merrell Dow hold that complaints forcefully stating federal ingredients do not necessarily arise under federal law, and why Franchise Tax Board observes that "artful pleading" in an effort to create a federal issue that is not really there, or avoid one that is essential, no longer succeeds. Although the well-pleaded-complaint doctrine of Gully v. First National Bank, 299 U.S. 109 (1936), establishes that the federal element must be part of the plaintiff's claim (as opposed to a defense), it does not mean that the plaintiff may maneuver a case into or out of federal court at will by including or omitting federal aspects. In our notice-pleading regime (adopted two years after Gully) the district court looks past the surface allegations to make its own assessment of what law the claim arises under.

Long before the Supreme Court adopted the artful-pleading doctrine and permitted district courts to look behind the surface of a complaint, Judge Friendly concluded in T.B. Harms Co. v. Eliscu, 339 F.2d 823 (2d Cir. 1964), that a dispute about the ownership of a copyright does not arise under federal law, even though the dispute could not exist but for the property right created by copyright, a federal ingredient that would have been enough under Osborn's expansive understanding. That conclusion holds sway among the federal appellate courts, and we have not only adopted it for copyright disputes, see Spearman v. Exxon Coal USA, Inc., 16 F.3d 722 (7th Cir. 1994) (dictum); Saturday Evening Post Co. v. Rumbleseat Press, Inc., 816 F.2d 1191, 1194-95 (7th Cir. 1987)

(dictum), but also extended it to disputes about ownership of patents. See Kennedy v. Wright, 851 F.2d 963 (7th Cir. 1988). We have intimated that it is equally applicable to disputes about the ownership of trademarks. Country Mutual Insurance Co. v. American Farm Bureau Federation, 876 F.2d 599, 601 (7th Cir. 1989). Two other circuits have square holdings on that point. Each adopted Eliscu's approach for trademark ownership disputes. See Gibraltar, P.R., Inc. v. Otoki Group, Inc., 104 F.3d 616 (4th Cir. 1997); Postal Instant Press v. Clark, 741 F.2d 256 (9th Cir. 1984). Because in this case the only serious dispute is how the contracts of 1986 and 1990 allocate ownership rights in the Moloney name and business history (as applied to stretch limousines), the same principle leads to the conclusion that there is no federal jurisdiction. The dispute arises under the law of contracts; any trademark claims are entirely derivative of the contract issues. The decision of the district court, and the parties' briefs in this court, are all about contract; trademark receives scarcely a sidelong glance, and the Lanham Act played no role in the disposition.

In a supplemental brief filed after oral argument, Moloney Coachbuilders attempted to distinguish Eliscu as a case dealing with a "pure" ownership dispute; the com plaint did not charge the defendant with infringement. The dispute concerned the allocation of royalties, not the lawfulness of any given copy or performance. One could say the same of Gibraltar, which concerned arbitration of an ownership dispute--though not of Postal Instant Press, which began with a charge of trademark infringement by a franchisee that stayed in business after the contract ended. Here the case began with a request for a declaratory judgment of non-infringement and continued with a counterclaim seeking damages for trademark infringement. Both the complaint and the counterclaim satisfy the approach of American Well--still used as an inclusive, though not an exclusive, definition--that the "suit arises under the law that creates the cause of action." Contract issues are defenses and cannot undermine jurisdiction established by the complaint, the argument concludes. If this is so then Postal Instant Press is wrongly decided and we must create a

conflict among the circuits. But that decision is not a blunder; Postal Instant Press applies the artful-pleading doctrine (though without naming it), and sensibly so.

Suppose that the claim in Eliscu had been cast slightly differently: Instead of demanding royalties according to (his interpretation of) the contract, the author of the lyrics could have argued that, because he was not being paid, the sale of the sheet music infringed his copyright. Turning the telescope around in this way should not be a means to create federal jurisdiction, when the real dispute is unaffected. Yet this is all that our parties have done. Instead of relying on the contract claims directly, they have tried to frame trademark issues that immediately vanish, a coat of water-soluble paint that washes away to reveal the contract dispute underneath. That disappearing-ink trick does not create federal jurisdiction; it simply defines artful pleading. International Armor might as well have requested a declaratory judgment that its advertising does not violate the antitrust laws or erisa.

A claim might arise under federal law even though all dispositive issues depend on state law if the remedies differ. Suppose that Illinois would give Moloney Coachbuilders actual damages, plus an injunction, if Earle Moloney broke his promises, but that federal law would provide treble damages if the broken promise amounted to misappropriation of Moloney Coachbuilders' trademark. Then breach of contract under state law would set up a genuine, distinctive federal claim. But the parties' supplemental briefs do not contend that the Lanham Act affords any remedy that is unavailable under the state law of contract, or makes that remedy easier to obtain, or in this case serves any role other than as a veneer laid over the state-law core. International Armor's complaint alerts the district court to the contractual foundation, and the counterclaim rubs it in; it describes the 1990 agreement in para.3, even before it identifies the parties to the case! We therefore treat this ownership dispute as what it is, a claim arising under the state law of contracts.

Seeking a way to keep this case in federal court, the parties have identified a second potential source of jurisdiction: If sec.1331 is unavailable, they contend, the court still had supplemental jurisdiction to enforce the 1990 agreement. Kokkonen v. Guardian Life Insurance Co., 511 U.S. 375 (1994), holds that a settlement of a suit arising under federal law normally is a contract that can be enforced in federal court only if there is an independent source of jurisdiction, such as diversity of citizenship. But Kokkonen adds that, if a court retains jurisdiction to enforce the terms of a settlement, then ancillary jurisdiction may be available. 511 U.S. at 380-81. The terminating order in the earlier suit (No. 88 C 6564) provides, among other things: "The Court shall maintain jurisdiction of this matter for the purpose of enforcing the Mutual Settlement and General Release Agreement."

One problem with this line of argument is that neither International Armor's complaint nor Moloney Coachbuilders' counterclaim invoked the jurisdiction retained in 88 C 6564. International Armor filed a brand new suit, and Moloney Coachbuilders filed a counterclaim in that suit rather than seeking relief from the original judge. The 1988 suit was assigned to Judge Aspen, this 1998 suit to Judge Nordberg. Moloney Coachbuilders asked Judge Nordberg to transfer the new proceedings to Judge Aspen so that they could be resolved as ancillary to the 1988 suit. That motion was denied. Although it is the court rather than the judge that retains jurisdiction, the court as an institution did not do what was necessary to show that the jurisdiction retained in 1990 was being exercised.

A second, and deeper, problem is that even a request filed directly under the 1988 case would not have been sufficient--for that case, too, was outside federal jurisdiction, and for the same reason the current suit does not arise under federal law. The 1988 suit was a poorly disguised request for interpretation of the 1986 contract, plus a defamation claim explicitly under state law. The district court's published opinion in that case steps through one state-law theory after another: defamation, tortious

interference with contract, and unfair competition. The court observed that Earle Moloney had alleged trademark infringement but also made it clear that the only dispute was whether the 1986 agreement had transferred to Moloney Coachbuilders, the new corporation, the Moloney Coach Builders trademark (with its distinctive script) that Earle Moloney had registered years earlier. 727 F. Supp. at 1238-40. Just as in the current suit, then, the trademark claim was a veneer for a contract dispute, and for the reasons we have already given did not arise under federal law. The district court in 1990 could "retain" no more jurisdiction than it had--which is to say, none.

Neither the court nor the parties can be happy when lengthy litigation comes to naught, but enforcing the limits of federal jurisdiction is essential lest clever lawyers be able to transfer suits at will to federal court. These litigious parties may be unwilling to give up; the long-running nature of this dispute does not augur well for peaceful resolution. But Earle Moloney should consider, before he renews hostilities in state court, the possibility that the district judge's thoughtful and well-reasoned opinions in this case will be persuasive with the state judges.

The judgment of the district court is vacated, and the case is remanded with instructions to dismiss for lack of subject-matter jurisdiction.