**AM GENERAL CORPORATION and General Motors Corporation, Plaintiff,**

v.

**DAIMLERCHRYSLER CORPORATION, Defendant.**

**Cause No. 3:01–CV–134 RM.**

United States District Court, N.D. Indiana, South Bend Division.

Feb. 25, 2003.

See also 311 F.3d 796.

Timothy J. Abeska, Barnes and Thornburg, John D. LaDue, Boveri Murphy Rice Ryan & LaDue, South Bend, IN, Donald E. Knebel, Barnes and Thornburg, Indianapolis, IN, Joseph D. Lewis, Barnes and Thornburg, Washington, DC, Carmen M. Piasecki, Thomas H. Singer, Nickle and Piasecki, South Bend, IN, Paul R. Garcia, Sheri J. Engelken, Alexandra N. DeNeve, Eugene F. Chay, John T. Hickey, Jr., Arthur Gollwitzer, III, Kirkland and Ellis, Chicago, IL, Joseph P. Bauer, Notre Dame Law School, Notre Dame, IN, for Plaintiffs/Counter–Defendants.

Robert J. Palmer, E. Spencer Walton, Jr., May Oberfell and Lorber, South Bend, IN, Carl W. Oberdier, David H. Bernstein, Bruce P. Keller, Debevoise and Plimpton, New York, NY, for Defendant/Counter–Claimant.

Robert G. Devetski, Barnes and Thornburg, Elkhart, IN, Kenya Scott, Jenkins and Gilchrist, Dallas, TX, for Movants.

### MEMORANDUM AND ORDER

MILLER, Chief Judge.

General Motors seeks summary judgment on the trademark infringement counterclaims that DaimlerChrysler brought against it for using a vertically-slotted grille in the H2. The crux of GM's argument is that DaimlerChrysler is foreclosed as a matter of law—the law created by this court in its preliminary injunction ruling and the law of the contract—from challenging GM's use of the grille. Daimler-

Chrysler rejects the notion that the court's ruling at the preliminary injunction stage is a proper basis for summary judgment and renews its arguments about the meaning of the contract. For the reasons stated below, the courts grants GM's motion for summary judgment. The court presumes familiarity with the facts laid out extensively in an earlier ruling. Memorandum and Order of February 28, 2002 (published as adopted by the Seventh Circuit at *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796 (7th Cir. 2002)).

General Motors seeks summary judgment on two bases. GM first argues that the memorandum and order denying the preliminary injunction controls the outcome of this summary judgment motion. In that order, the court decided that DaimlerChyrsler (through its predecessor) transferred all intellectual property rights in the Humvee to GM (through its predecessor) in the 1983 agreements. "The agreements' plain and unambiguous language transferred to AM General [and therefore GM] all rights relating to the Humvee design." Memorandum and Order of February 28, 2002 at 42. General Motors says that this interpretation binds the court in this proceeding, foreclosing DaimlerChrysler from bringing any trademark claims. General Motors argues in the alternative that if the court reaches the merits and reexamines the 1983 agreements, it will reach the same conclusion: DaimlerChrylser assigned all intellectual property rights embodied in the Humvee to GM in the 1983 agreements.

DaimlerChrysler responds with four main arguments: 1) GM predicates its motion on a non-existent assignment of the design patent application; 2) ownership of the design patent application did not give GM the right to use the vertically slotted grille on a consumer vehicle; 3) the agree-ments didn't convey to GM a license to use the Humvee grille on a consumer vehicle; and 4) GM's summary judgment motion cannot rest solely on the court's findings in the preliminary injunction hearing. Essentially, DaimlerChrysler argues that it never gave AM General the right to use the Humvee grille on a consumer vehicle; it only granted AM General a license to use the grille on military and government vehicles being produced in 1983 and vehicles that represented a reasonable extension of this business—a category that DaimlerChrysler concludes does not include mainstream consumer vehicles. DaimlerChrysler bolsters this substantive attack with a procedural one: the court must deny GM's motion because it is predicated solely on findings and conclusions from the preliminary injunction decision: "[i]t is well settled, however, that a moving party must do more than cite a court's previous preliminary opinion to support a motion for summary judgment." DaimlerChrysler's Response at 16 (citing *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 528 n. 4 (7th Cir.2000)).

Summary judgment is proper when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c). In deciding whether a genuine issue of material fact exists, the court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 245, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine issue of material fact exists when a rational trier of act could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the non-moving party. *Ritchie v. Glidden Company*, 242 F.3d 713,

720 (7th Cir.2001). "[N]either the mere existence of some alleged factual dispute between the parties, nor the existence of some metaphysical doubt as to material facts is sufficient to defeat such a [summary judgment] motion." *Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.*, 185 F.3d 732, 738 (7th Cir.1999) (internal citations and quotations omitted).

■ Under the law of the case doctrine—the relevant preclusion doctrine in this case [1]—"when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages of the same case." *United States v. Story*, 137 F.3d 518, 520 (7th Cir.1998) (citations and quotations omitted).

■ Courts are wary of importing findings and conclusions from the preliminary injunction stage into their summary judgment rulings. *Communications Maintenance, Inc. v. Motorola, Inc.*, 761 F.2d 1202, 1205 (7th Cir.1985) ("A court must be cautious in adopting findings and conclusions from the preliminary injunction stage in ruling on a motion for summary judgment."). Courts usually make findings and conclusions at the preliminary injunction stage on the basis of incomplete evidence after a brief period of consideration, and the district court faces different tasks at these different stages. When deciding a preliminary injunction motion, the court determines whether there is a reasonable likelihood that the moving party will prevail on the merits; at the summary judgment stage, the court considers whether there is an issue of material fact for trial

after construing the fact in the light most favorable to the non-movant. *Id.*

■ In this case, there is no concern about different standards. GM does not invite the court to adopt its ultimate conclusion in the preliminary injunction memorandum—that DaimlerChrysler is unlikely to succeed on the merits—as the reason for summary judgment; such an invitation would be inappropriate because the conclusion from the preliminary injunction answers a different question than that asked at summary judgment. Instead, GM asks the court to grant summary judgment on the basis of a contract interpretation made as part of a preliminary injunction decision, and it is appropriate for the court to do so. Under New York law, the applicable contract law according to § 7.10 of the stock purchase agreement, the court applies the same interpretive standard at the summary judgment stage as it does at the preliminary injunction stage. *Rehberger v. Richtberg*, 295 A.D.2d 490, 744 N.Y.S.2d 477, 478 (N.Y.App.Div.2002) (explaining, in the context of summary judgment, that a clear and unambiguous written contract will be enforced according to its terms); *Yonkers Racing Corp. v. Catskill Regional Off–Track Betting Corp.*, 159 A.D.2d 615, 552 N.Y.S.2d 670, 674–675 (N.Y.App.Div. 1990) (using the same standard to interpret a contract in the course of reviewing the propriety of a preliminary injunction).

■ The completeness of the evidence and the time available for the issue's consideration at the preliminary injunction

---

1. Collateral estoppel also can bind a court to decisions made earlier in the same case, but only when the subsequent proceedings are collateral, as a dispute about attorney's fees arising in a CERCLA case is collateral to the main dispute about liability under CERCLA. *Amcast Industrial Corp. v. Detrex Corp.*, 45 F.3d 155, 158–160 (7th Cir.1995). Unlike the attorney's fee dispute, the issue of what intel-

lectual property rights were transferred through the 1983 agreements is not collateral to the pivotal issues in the case—it is the central issue. Still, "[b]oth doctrines express a reluctance motivated by a desire to promote the inexpensive and expeditious dispatch of litigation to reopen issues that have been resolved with a fair approach to definitiveness." *Id.* at 160.

stage remain concerns. Courts can imbue conclusions and findings arising out of preliminary injunction proceedings with preclusive effects if· the circumstance surrounding these decisions indicate that they are accurate and reliable. Findings and conclusions of law made at the preliminary injunction stage can have preclusive effects. *Commodity Futures Trading Comm'n v. Board of Trade,* 701 F.2d 653, 657–658 (7th Cir.1983) (recognizing that findings made during a preliminary injunction hearing could be given preclusive effect) (citing *Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 89 (2nd Cir.1961)). Courts endow them with binding force when "the circumstances make it likely that the findings are accurate, reliable." *Commodity Futures Trading Comm'n,* 701 F.2d at 657. According to *Lummus,* on which *Commodity Futures Trading Comm'n* relies, 701 F.2d at 657, the accuracy and reliability of findings at a preliminary injunction depend on "the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review." *Lummus,* 297 F.2d at 89.

■ The court inquires first into the nature of the earlier decision. *Lummus,* 297 F.2d at 89. Nothing about the court's interpretation of the 1983 agreement was tentative: "the agreements' plain and unambiguous language transferred to AM General all rights relating to the Humvee design." Memorandum and Order of February 28, 2002 at 42. The. court could speak emphatically even at the preliminary injunction stage because this interpretation depended solely on the text of the 1983 agreements, text that would always have the same meaning regardless of the stage of the proceedings because its language would not change and it would always be interpreted through the same lens. *Rehberger,* 744 N.Y.S.2d at 478;

*Yonkers Racing Corp.,* 552 N.Y.S.2d at 674–675. Importantly, neither party claimed that there were other relevant agreements. The decision was avowedly certain, not avowedly tentative.

The *Lummus* court also directed inquiry into the adequacy of the hearing. A longer, more in-depth hearing might be expected to yield more accurate findings and conclusions than a short, superficial one; a more extensive hearing may provide a better informational foundation for any decision, and the judge may reach more enlightened conclusions if she has more time to contemplate the case. The eight-day preliminary hearing in this case was longer than many trials, *Commodity Futures Trading Commission,* 701 F.2d at 658, with both parties introducing many exhibits and presenting numerous witnesses. Perhaps more importantly, the hearing began fully a year after GM originally filed the case, so everyone had plenty of time to conduct discovery and sharpen the edges of the issues presented. The court took two weeks to issue the memorandum and order denying the preliminary injunction. In other words, the court heard plenty of evidence and had plenty of time to process it. The hearing was adequate.

Finally, the court should assess the opportunity for review and whether the litigants had a chance to appeal the court's decision. *Amcast,* 45 F.3d at 160 (making clear that opportunity for review refers to appellate review). This inquiry touches on two key points. Trial courts are thought likely to render better decisions with knowledge that an appellate court may review their product, *Commodity Futures Trading Commission,* 701 F.2d at 658 (remarking, "since such decisions are appealable ... the findings on which they are based often receive considerable ... scrutiny"), and if an appellate court actually reviews the decision it can correct any

extant errors, *id.* This court knew the court of appeals might review its decision because it well settled that a party may be appeal from a preliminary injunction order. *Id* (citing 28 U.S.C. § 1292(a)(1) for the proposition that preliminary injunctions are appealable). And the court of appeals adopted this court's opinion as its own because it did "not contain any error." *AM General Corp.*, 311 F.3d at 802. The review prong of *Lummus* militates in favor of preclusion.

DaimlerChrysler argues that the court cannot adopt findings of fact and conclusions of law from the preliminary injunction stage, let alone the ultimate conclusion. The Supreme Court's decision in *University of Texas v. Camenisch* provides the strongest support for this position. 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). The *Camenisch* Court explained, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits ... and the findings of facts and conclusions of law made by a court granting a preliminary injunction are not binding in a trial on the merits." *Id.*

The extensiveness and timing of the preliminary injunction hearing in this case makes this case far different from *University of Texas v. Camenisch*. While preliminary injunction hearings ordinarily are less complete than would be available in a trial on the merits, *Camenisch*, 451 U.S. at 395, 101 S.Ct. 1830 ("[A] preliminary injunction is customarily granted on the basis of ... evidence that is less complete than in a trial on the merits."), this contract interpretation would not benefit from the introduction of any more evidence: the language of the contract is clear and unambiguous, so extrinsic evidence is irrelevant. Memorandum and Order of February 28, 2002 at 42. Further, the Supreme

Court follows the general rule set forth in *Camenisch* only after examining the specific circumstances of the preliminary injunction hearing at issue. *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 603–604 n. 7, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984) (adopting *Camenisch's* rule only after discussing the circumstances of the preliminary injunction hearing, e.g. the length of the hearing and opportunity for discovery). Again, the specific circumstances of this injunction hearing—an eight-day hearing a year into the case—support preclusion.

Other courts have recognized that all cases do not fit within the framework employed in *Camenisch*. In *Don King Productions, Inc. v. Douglas*, the court reconciled *Lummus* and *Camenisch* by viewing cases that meet the *Lummus* criteria as exceptions to *Camenisch*, "[t]here are exceptions to the general rule [that findings and intermediate conclusions made in a preliminary proceeding are not given preclusive effect], arising in circumstances where a ruling is rendered 'practically' final owing to factors demonstrating 'that it was not avowedly tentative ...'" 742 F.Supp. 741, 754 (S.D.N.Y.1990) (citing *Lummus*, 297 F.2d at 89). *Amcast*, 45 F.3d at 158, took a similar stance, but without specifically invoking *Camenisch*, explaining that preclusion usually only follows from final decisions (in a Federal Rule of Civil Procedure 58 sense), but, it continued, "this principle itself is not unwavering," in support of which it cited *Lummus*. Moreover, as the *Amcast* court reminded, "[t]here are few generalizations in American law to which there are no exceptions." *Id* (citing *Alyeska Pipeline Service Co. v. United States*, 688 F.2d 765, 231 Ct.Cl. 540 (1982)).

For these reasons, the court finds that its interpretation of the 1983 agreements deserves preclusive effect. Thus, for pur-

poses of this summary judgment decision, and for the rest of the case, the original interpretation of the 1983 agreements stands: DaimlerChrysler (though its predecessor) transferred all intellectual property rights in the Humvee to GM (through its predecessor).

It follows that GM is entitled to judgment as a matter of law on DaimlerChrysler's claims. DaimlerChrysler cannot assert intellectual property rights in the Hummer because it transferred them all in 1983. Trademark law creates property rights in the use of protected marks. *International Armor & Limousine Company v. Moloney Coachbuilders, Inc.,* 272 F.3d 912, 914 (7th Cir.2001). To assert these rights, however, one must own the intellectual property. *Id.* DaimlerChrysler does not own this intellectual property, so it cannot complain about its misappropriation. There is no material question of fact about this; the contracts are unambiguous. General Motors is entitled to judgment on the law.

Accordingly, the court grants GM's motion for summary judgment [Docket No. 290]. The court also denies as moot GM's motion for leave to serve a summary judgment motion past the deadline to do so [Docket No. 287].

SO ORDERED.